36652. DWYER *v.* PROVIDENCE WASHINGTON INSURANCE COMPANY.

DECIDED MAY 6, 1957.

674

*William Hall, Woodruff & Stephens,* for plaintiff in error.

*E. Smythe Gambrell, James C. Hill, Gambrell, Harlan, Russell, Moye & Richardson,* contra.

GARDNER, P. J. The law covering this type of insurance was codified in the Code of 1863, Code § 2774 et seq. (now Chapter 56-12 of the Code titled "Marine Insurance"). Code § 56-1204 reads: "The insured impliedly warrants that the ship is seaworthy, and shall not be changed except from necessity, and that she shall be employed, conducted, and navigated with reasonable skill and according to law." The phrase "perils of the sea" has

a particular meaning. In Code § 20-704 it is provided: "2. Words generally bear their usual and common signification; but technical words, or words of art, or used in a particular trade or business, will be construed, generally, to be used in reference to this peculiar meaning . . ." It would therefore become necessary for us to inquire as to the meaning of the phrase "perils of the sea" as applied to the particular type of marine insurance applicable to the policy upon which suit is brought and the facts alleged in the petition. Our attention is called by counsel for both parties to many foreign decisions. In *Lipschitz* v. *New Zealand Ins. Co.*, 34 *Ga. App.* 825 (132 S. E. 131), an opinion written by one of the most able appellate judges of this State, the term "perils of the sea" has been defined extensively. There it was held: "The term 'perils of the sea' and 'perils of navigation' are not synonymous.

"In 38 Corpus Juris 1098, § 268, 'perils of the sea' are defined as follows: 'Perils of the sea embrace all kinds of marine casualties, such as shipwreck, foundering, stranding, collision, and every specie of damage done to ship or goods at sea by the violent action of the winds or waves. They do not embrace all losses happening on the seas. . . The rule has been laid down that a policy insuring against *perils of the sea* covers only extraordinary risks.' . . In Starbuck *v.* Phenix Ins. Co., 119 N. Y. App. Div. 139 (45 N.Y. Supp. 995), it was said: 'Without deeming it necessary to discuss all the different cases presented upon the former appeal and on this, we may adopt the view that *damage done to a vessel by perils of the sea includes every specie of damage done to the vessel at sea by the violent and immediate action of the winds or waves, or both, as distinct from the ordinary wear and tear of the voyage, and as distinct from injury suffered by the vessel in consequence of her not being seaworthy at the outset of her voyage, or afterwards, under circumstances in which the master was guilty of negligence in not making her seaworthy.'* In Allison *v.* Corn Exchange Ins. Co., 57 N. Y. 87, it was said: 'In a marine policy against *the perils of the sea* the underwriter assumes only extraordinary risks, and if a vessel goes down by the ordinary action of the wind and waves, the insurer is not responsible, for the vessel is assumed to have been seaworthy.'

In 1 Phillips on Insurance, § 1086, it is said: 'Whatever risks are assumed by the underwriter, his liability is subject to two limitations; he is not liable for the consequences of the perils assumed except when they operate in an extraordinary degree, and he is liable only for damage and loss of an extraordinary kind.' In Barnwell *v.* Church, 1 Caines (N.Y.), 217, 234 (2 Am. Dec. 180) it was said: 'The insurer undertakes only to indemnify against the extraordinary and unforeseen perils of the sea, not against the ordinary perils to which every ship must be exposed in the usual course of the voyage.'

"Plaintiff in error relies upon the case of *Underwriters' Agency* v. *Sutherlin*, 55 *Ga.* 266. In that case it was held: 'In a marine risk when navigation is partly by fresh water and partly by salt water and involves transshipment, proof of damage by water of any kind is, prima facie, proof of damage by the perils of *navigation* (italics ours), even if the wetting is caused by rains, and whether the rains fell on board, or on the usual transshipping wharf whilst the goods were upon the same in the ordinary course of transit.' But it will be noted from a consideration of the terms of the policy there involved that quite a different question from that here involved was presented. In that case the perils undertaken were those of 'navigation', and not 'perils of the sea'. The former term, as has been said, is much broader than the latter. Furthermore, the policy involved in that case covered injury from actual contact with 'water', and not actual contact of 'sea water with the articles damaged, occasioned by sea perils,' as in the instant case. See also Brazilian Export and Import Co. *v.* Firemans Fund Ins. Co., 106 Misc. Rep. (N.Y.) 139 (174 N.Y. Supp. 265). Thus, if it had been proved, as is only surmised, that the damage was in fact occasioned by contact with river water while the goods were in process of transshipment at an inland port, and even though it be conceded that the protection afforded by the contract against 'perils of the sea' was not suspended while the goods were in an inland port, for the purpose of transshipment, it still would not follow that such damage had been shown to have been occasioned by what could be properly termed a 'peril of the sea'. Finally, even if it could be assumed that such an injury, when thus occasioned at such a port, could

ordinarily be accounted to have been occasioned by a 'peril of the sea', still, under the special and specific terms of the instant contract, the liability could not be extended to cover damage occasioned by contact with any water except sea water; and even though sea water, under the terms of the contract, be held to mean any water in which the vessel floated, there was no evidence whatever that the damage was caused by contact with such water. [Italics ours.]"

Thus we see that in interpreting the term "perils of the sea" it is evident that the damage must be occasioned by some unusual occurrence, and the conclusion is reached that in considering what is and what is not a peril of the sea the question is whether the loss arose from injury from without or from weakness from within. See in this connection 19 Am. & Eng. Ency. Law 1023. If occasioned by weakness from within damages are not recoverable under a policy such as is here involved. There is nothing in this record to show that anything unusual happened to the boat before it was discovered that it was sunk in the manner described in the petition. The contract of insurance was not ambiguous. The petition nowhere alleges that the boat was seaworthy, as required by the laws of Georgia. The insurance policy nowhere provides that there is any liability under the policy in the event the negligence of the insured in not keeping the boat seaworthy caused the boat to sink. We are aware that the decisions on the question now under consideration are not unanimous throughout the United States but the great weight of authority is that the manner in which the damage occurs to a vessel determines liability or non-liability. The weight of authority is that the plaintiff had no cause of action.

The court did not err in sustaining the demurrers and dismissing the petition.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*