58 N.J. Super. 334 (1959)
156 A.2d 175
JOHNSON BROS. BOAT WORKS, PLAINTIFF,
v.
LESTER CONRAD, DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
GENERAL INSURANCE COMPANY OF AMERICA, A BODY CORPORATE, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided November 5, 1959.
*337 Mr. Robert F. Colquhoun, attorney for the third-party defendant.
Mr. Eugene T. Urbaniak, attorney for the plaintiff.
Mr. Howard Ewart, attorney for the defendant and third-party plaintiff.
The opinion of the court was delivered by LARRABEE, J.C.C. (temporarily assigned).
Under R.R. 1:31-1, Johnson Bros. Boat Works on February 26, 1959 filed suit against Lester Conrad, alleging that it had repaired Conrad's Matthews cruiser Privateer pursuant to a written contract for a paint, varnish and refinishing job priced at $1,441.95, which was also the reasonable value thereof, and further repaired, refinished, refurnished, refitted and reconditioned the Privateer on oral contract with Conrad, the reasonable value of which was $6,368.59.
Conrad answered admitting the written contract but denying (1) that he requested the second job, which he contends was done at the request and direction of General Insurance Co., and denying (2) that the sum claimed is reasonable value. Further, contending (3) that the second job was required to repair damage caused by the negligence of Johnson Bros.' mechanic who, in the course of a repair job, disconnected and removed the exhaust line leading from the motor to the stern of the cruiser and failed to replace it or plug the hole in the transom through which the exhaust was discharged; that water entered the hull, the Privateer sank and water damage as a result made necessary the second job.
Conrad also counterclaimed for damages of $7,500 based on the negligence of Johnson Bros.' mechanic.
Conrad obtained leave of the court to file a third-party complaint against General Insurance Company, and the complaint was duly filed on July 2, 1959. In it Conrad alleged the occurrence of the main suit and, further, that General Insurance Company had issued an insurance policy on the *338 boat for one year from April 14, 1957 to April 14, 1958 in the sum of $7,000 against loss or damage to the hull. Further, that by endorsement the boat could remain in commission until March 15, 1957. That the accident referred to above occurred on or about October 24, 1957, whereby the boat was damaged $6,084.18; that Conrad gave prompt notice to the General Insurance Company, which recognized its liability, undertook to negotiate for the repairs and reimbursed Conrad $1,472.01; that the General Insurance Company ordered the second job done by Johnson Bros. Conrad asks that if judgment be entered against him in the main suit, one for the same sum be entered in favor of him against the General Insurance Company. A copy of the policy is annexed to the third-party complaint.
The third-party complaint has been served upon the General Insurance Company which now moves for a dismissal of the third-party complaint. The defendant insurance company, hereinafter referred to as General, contends that the third-party complaint fails to state a cause of action.
The grounds alleged by General are:
1. That General's policy is restricted to indemnification and since Conrad has not paid for the cost of repairs he is not entitled to reimbursement or indemnification.
2. That Conrad has no right of recovery because by applying for the policy he warranted by implication that the boat was seaworthy and the boat was not seaworthy.
3. That General's policy insures against "perils of the sea" and that no peril of the sea was involved in the sinking of the Privateer.
4. That no recovery can be had on the clause because no fittings were involved.

LIABILITY OR INDEMNITY INSURANCE?
In the course of the argument, counsel for Conrad stated that Conrad's claim is based on section A of the policy. This section provides liability type coverage as distinguished from section B which, in form, provides indemnity type *339 coverage. Conrad could not have relied on section B because, not having paid for the loss, he would not be entitled to indemnification.
General contends that even section A is indemnity insurance, but inspecting the policy as a whole, the court notes that section A provides that General "does hereby insure Lester I. Conrad * * * upon the wood gas yacht Privateer 1930 * * * loss, if any, payable in funds current in the United States to insured or order."
Section B is explicit in stating that "if the insured shall * * * become liable to pay and shall pay." Section C states that "The company agrees to pay to or for each person * * * who sustains bodily injury * * * the reasonable expense for necessary medical surgical," etc.
Under "General Conditions" the following clause appears:
"5. Notice and payment of loss. In case of loss covered by this policy, prompt notice shall be given this Company, such loss to be paid within thirty days after proof of loss and proof of interest in the insured yacht is received * * *."
Since the policy is explicit in requiring payment of the loss by the insured in section B, it is reasonable to assume that such payment need not be made when not explicitly required as in section A. If General intended to make it an indemnity policy, why was it not so stated in Paragraph 4? This court is reluctant to read into a written policy, drawn by the insurance company, clauses favoring the insurance company, which the insurance company could easily have stated expressly in the policy. To do so would be unfair because the insurance company is dealing in these cases with persons who would have no idea that such a clause would be implied and it knows, or should know, that the average small craft owner would not be aware of it. The policy is to be construed against the drawer.

THE IMPLIED WARRANTY OF SEAWORTHINESS.
General contended that there is an implied warranty made by Conrad that the boat is seaworthy and that it in fact *340 was not. Cited in support of this contention is the following quotation from 5 Couch, Cyclopedia of Insurance Law, section 1089:
"* * * Furthermore, it is well settled that there is an implied warranty or condition in every contract of marine insurance under a voyage policy on which there is cargo or freight that the vessel is seaworthy and competent to perform her voyage at the time she sails. In fact it has been said that such a warranty can only be excluded by terms in writing in the policy in the clearest language. Deterorate [Turret] Crown (C.C.A. 2d) 297 F. 766; Klein v. Globe and R.F. Ins. Co. (C.C.A. 3rd) 2 F.2d [137] 139; L[e]atham Smith-Putnam Navigation Co. v. National Union Fire Insurance Co. (C.C.A. 7th) 96 F.2d 923."
The implied warranty referred to is obviously applied to commercial cargo carriers. It applies to boats "on which there is cargo or freight," and it is raised in cases of "voyage policies." The Privateer was not a cargo boat and the policy was a time policy, not a voyage policy.
The rule of implied warranty of seaworthiness has been applied generally in cases of voyage policies which seem to be the ones most frequently litigated. The cases in which the warranty has been raised in cases of time policies seem to be relatively few.
It should be noted that in line with the general legal principles applicable to warranties, the warranty is implied at the commencement of the risk.
Par. 652 (4)
"Commencement and Duration of Warranty.
The implied warranty of seaworthiness applies only to the commencement of the risk and each stage thereof.
The warranty of seaworthiness has application to the commencement of the risk and to the commencement of each stage thereof. Prior or subsequent unseaworthiness is not a breach of the warranty * * *.
There is no implied warranty that the vessel will remain in a seaworthy condition throughout the life of the policy * * *." 45 C.J.S. Insurance § 652 p. 566.
To apply the rule developed here  it is simply that a warranty is primarily a representation. That representation *341 is made when the application for a policy is filed. In the case of a voyage policy, this is usually just prior to the voyage, and to relate the situation to a time policy, the representation is made when the application is filed and the policy is granted, that is, at the beginning of the term.
And so, if liability is to attach, it should be shown that the defective condition existed in a latent or patent manner when the policy was issued. Obviously this defect occurred after the issuance of the policy, and consequently there was no breach of a warranty of seaworthiness.
The court has grave doubts that an implied warranty of seaworthiness should be applied in a case such as the present one where the boat is a pleasure craft. The warranty is usually implied in connection with a contract of insurance on a cargo carrier. The owners of cargo carriers could be viewed as business men who should be held to awareness of customs of the trade, and it is proper to make part of a contract a trade custom where such custom is so well established, so notorious in the trade, that they are charged with notice thereof, Public Service Mutual Ins. Co. v. White, 4 N.J. Super. 523, 526 (App. Div. 1949) and warranties and terms may be implied where raised by statutory authority as in the Sales Act. But the usual primary requirement for a contract is that there is mutual assent, that the minds of the parties have met, and certainly the thought of a warranty of seaworthiness never enters the mind of the ordinary small craft owner any more than the idea of an implied warranty of roadability enters the mind of an assured owner-operator of a motor vehicle. See 5 Couch, Cyclopedia of Insurance Law, 3825. Why should it apply to one and not the other?
This comment is prompted by the circumstance that the case of Fisch v. Insurance Co. of N.A., 44 N.J. Super. 416 (App. Div. 1957), does not decide whether or not there is a continuing implied warranty.
This reason applies particularly with reference to the view that there may be a continuing warranty, which would be promissory in character. If it exists, it is contractual in *342 nature and should satisfy the essential requisites of a contract an agreement between the parties. Since the minds of the parties do not meet, there is no contractual basis for the continuing warranty.
The line of authority supporting the existence of a continuing warranty is suspect because it is based on a case in which the policy contained an express warranty of seaworthiness and an express exclusion of losses caused by unseaworthiness, which may have provided a basis for inferring a continuing warranty. These cases hold that where a continuing warranty has been raised, it is merely a negative warranty (really an agreement rather than a warranty) that the owner or those in privity with him will not knowingly send the vessel to sea in a deficient condition. Where the owner has no knowledge of the condition created by negligence, liability on the policy is not precluded. Tropical Marine Products, Inc. v. Birmingham Fire Ins. Co., 247 F.2d 116 (5 Cir. 1957); N.Y., New Haven & Hartford R. Co. v. Gray, 240 F.2d 460 (2 Cir. 1957); Saskatchewan Gov. Insurance Office v. Spot Pack, Inc., 242 F.2d 385 (5 Cir. 1957).
Negligence subsequent to sailing does not void the policy. 5 Couch, op. cit. 1089(g).
Here the owner had no knowledge, nor was any imputable to him. Negligence subsequent to the beginning of the term in the case of time policies is comparable to negligence subsequent to sailing in voyage policies. Consequently, even if a continuing warranty was implied, there was no breach of such a warranty.

WAS IT A "PERIL OF THE SEA" OR "HANDLING FITTINGS"?
Counsel for Conrad has stated that Conrad does not claim that the accident was a peril of the sea, under the clause in section "A" entitled "Perils," but rather he claims under that part of the "Perils" clause which refers to "fittings." This part of the clause reads as follows:
*343 "This insurance also to cover loss of or damage to the property covered caused by explosion, earthquake, vandalism or malicious mischief, and contact with vehicles or aircraft or objects falling therefrom, accidents in hauling, launching or moving in shipyards or similar premises, and accidents in loading, discharging or handling stores and fittings or in taking on fuel; with respect to outboard motors only, this insurance also to cover loss or damage arising from loss overboard."
Was this an "accident in loading, discharging or handling stores and fittings"? Obviously no stores are involved. Consequently the question which remains is "Were fittings being handled?"
General contends that applying the rule of ejusdem generis, since stores are items easily moved about, then fittings must also be construed to be things easily moved about.
Ejusdem generis could be applied in this manner if the clause read "supplies, furnishings, stores and fittings." Here there is a series of items definitely belonging to one class which determines the class of an associated item. But where there are only two items, who can say which controls? Since there are only two items, neither can control the other.
This sample of a fortiori reasoning is also defeated by the pragmatic approach. Refer to the 84-page 1959 catalogue of Point Pleasant Hardware Company, entitled: "dependable FITTINGS for outboards, small motorboats and kit boats." This contains such items as exhaust pipe flanges, mufflers, cleats, chocks, bitts and many other stationary fixtures that are not movable. A fitting is anything made in fitting up, fittings or apparatus; also fixtures, tackle, apparatus, equipment. Brown v. State, 116 Ga. 559, 42 S.E. 795 (Sup. Ct. 1902). It would not include furniture in a house. Howe & Rogers Co. v. Lynn, 71 F.2d 283 (2 Cir. 1934).
Quoting from Bloom v. Locke, 69 F.2d 113, 116, 21 C.C.P.A. 888 (C.C.P.A. 1934):
"A `fitting' is thus defined by Webster's New International Dictionary (1932) `anything used in fitting up; esp. pl., necessary fixtures or apparatus; auxiliary parts, as of a boiler, or the small *344 separately made parts of a machine; the fittings of a room; gas fittings; bicycle fittings.'"
Lockwood's Dictionary of Mechanical Engineering Terms (Horner) thus defines the word:
"Commonly applied to the essential parts or adjuncts of an engine, or boiler, or machine. Specially applied to boiler fittings."
Webster's New International Dictionary (2d ed. 1949) gives the following definition:

"FITTING
1. Act of one that fits
2. Anything used in fitting up; esp. pl. necessary fixtures or apparatus; auxiliary parts, as of a boiler, or the small parts of a machine; as, the fittings of a room; gas fitting.
3. Math. = curve fitting."
The court believes that when a boat is outfitted, all essential component parts of the boat, except the hull, are included.
In view of the definitions recited, the exhaust pipe was a fitting, it was an auxiliary part, it was an adjunct of the engine.
And when the exhaust pipe was taken out it was being handled. Doubtless a more specific description of what occurred would be "repair to the engine," but general terms are used in a policy purposely with intent to cover various and many situations and to enumerate them specifically would be tedious work.
In view of the findings reported, the action is dismissed.