## 47357.   MATHIS v. HANOVER INSURANCE COMPANY.

ARGUED SEPTEMBER 8, 1972—DECIDED SEPTEMBER 22, 1972.

*Westmoreland, Hall & Bryan, James M. Crawford,* for appellant.

*Kleiner, Herman, DeVille & Simmons, Joel M. Merren,* for appellee.

HALL, Presiding Judge. While there is very little Georgia case law on marine insurance, general maritime law governs the construction of these policies and there are many useful cases from the federal courts and other states. Before discussing the case here, certain basic principles need to be reviewed. First of all, unless otherwise stated, a marine insurance policy does not cover loss resulting from the ordinary action of wind and waves, natural decay or ordinary wear and tear of the vessel or negligence of the owner in keeping the vessel seaworthy. The classic "perils of the sea" clause has been so interpreted time and time again. See 5A Appleman on Insurance 82, § 3272; *Dwyer v. Providence Washington Ins. Co.,* 95 Ga. App. 672 (98 SE2d 592). Even the more modern "all risks" clause covers only extraordinary and fortuitous events and the onus remains where it would have been under a "perils of the sea" clause. Mellon v. Federal Ins. Co., 14 F2d 997; Anders v. Poland (La. App.), 181 S. 2d 879. It is also a general rule that the owner warrants the seaworthiness of the vessel at the time the risk attaches; and if it is not seaworthy then, the policy is void ab initio. 4A Appleman 203, § 2654. Seaworthiness means the ability to withstand the ordinary stress of wind, wave and weather which the vessel might normally be expected to encounter—in other words, to stay afloat in the absence of abnormal conditions. 5A Appleman 85, § 3273. The definition is relative, and includes the concepts of "lakeworthy" and "portworthy." 45 CJS 561, Insurance, § 652.

There is also a body of case law on the presumptions surrounding seaworthiness. The one which is relevant here is best stated as follows: "[W]hen a vessel sinks at a sheltered berth in calm weather without any obvious explanation . . . a presumption arises that the . . . loss was due to the unseaworthiness of the vessel in some particular. But . . .

an insured can rebut the foregoing presumption by establishing that in fact the vessel concerned was seaworthy before the sinking . . . and if he succeeds in doing so, the counter presumption arises that the unexplained sinking and consequent loss was caused by some extraordinary, although unknown and unascertainable, peril of the sea." Boston Insurance Co. v. Dehydrating Process Co., 204 F2d 441, 443.

However, an essential consideration to the case here remains unanswered by general maritime law. That is whether the traditional warranty of seaworthiness ought to apply to a pleasure craft. (This query was also raised by the New Jersey court in Johnson Bros. Boat Works v. Conrad, 58 N. J. Super. 334 (156 A2d 175). It should be noted too that the statutory warranty relied upon in *Dwyer,* supra, has been repealed. Ga. L. 1960, p. 289 et seq.)

The warranty and all its ramifications was developed for the peculiar circumstances of single-voyage insurance for cargo ships. Businessmen well versed in usages of the trade arrange for coverage, frequently with underwriters at some distance, for a particular voyage and cargo. The warranty is of utmost importance there since it would not be economically feasible for the insurers to inspect the vessels involved in each transaction. Further, the warranty and surrounding presumptions serve as useful tools in determining liability for otherwise unexplainable losses on the high seas, although modern communication devices have certainly lessened this historical function. Hull insurance for ships is usually a separate and distinct form, involving meticulous periodical inspection by the insurers. At any rate, the owner of a cargo ship understands exactly what constitutes his various contracts of insurance.

Certainly the same cannot be said for the new owner of a pleasure craft who calls his agent to arrange for coverage. He would not be expected to know he was making elaborate, technical warranties. He would surely equate the transaction with adding another automobile or house, and he would almost certainly expect that if the boat sank

through no fault of his own, it would be covered. (Fault would, of course, include neglect to repair.) We do not believe the warranty of seaworthiness under traditional maritime law can be read into an "All Risks Yacht Policy" in which use of the vessel is restricted to private pleasure. The most that the applicant for insurance can be said to warrant is that the boat is presently afloat (if in the water) and that he presently knows of no reason why it should sink. In other words, he is not perpetrating an insurance fraud. If insurers want more than this, they can insist upon inspecting a boat before issuing a policy. Unlike typical voyage underwriting, there is no commercial expeditiousness to be served under the press of many simultaneous, worldwide transactions.

In an action to collect on an insurance policy, the insured must show that the occurrence was within the type of risk insured against to make a prima facie case. If a sinking is without obvious explanation, this becomes factually impossible. Therefore, presumptions are still necessary tools for determining liability when a pleasure craft is involved, but we require a simplified set. Borrowing from, but modifying those set out in the Boston Ins. Co. case, 204 F2d 441, supra, the initial presumption here would be that when the boat sank at the dock under ordinary lake conditions the same day the policy was issued, the insured knew or ought to have known that the boat was not fit to be in the water and therefore the risk never attached. (Similarly, if the sinking occurred at some later date, the presumption would be that it was due to deterioration of the craft, an excluded cause under the policy). However, when the plaintiff introduced evidence that the boat was afloat, not leaking and to all appearances in good order that day, then the counter presumption arose that the sinking was caused by some extraordinary, although unexplained, occurrence within the type of risk insured against. Of course, the insurer had the option of contradicting the evidence either by introducing other evidence concerning the condition of the boat or by impeaching plaintiff and his witnesses. Neither

was done here. It was improper to direct a verdict against the plaintiff after he had made a prima facie case.

*Judgment reversed. Pannell and Quillian, JJ., concur.*