**MacMARY CORPORATION, Plaintiff**

**v.**

**MANUFACTURERS TRUST INSURANCE COMPANY, Defendant**

Civil No. 84/1980

District Court of the Virgin Islands

Div. of St. Croix

September 21, 1981

JOEL HOLT, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

BERNARD PATTIE, ESQ., Christiansted, St. Croix, V.I., *for defendant*

FINCH, *Judge, Sitting by Designation*

## MEMORANDUM AND ORDER

This case is before the Court on plaintiff's motion for summary judgment. This dispute arises out of damage to the engine of the motorboat "Good Times" occurring in 1979. In September 1979 the boat was owned by MacMary Corporation; Robert McKenna was the president of this corporation. The vessel was insured by Manufacturers Trust Insurance Company. It was moored at the St. Croix Yacht Club, and Mr. McKenna hired Ed Rondo of St. Croix to take care of the vessel as ship's master.

Hurricanes David and Frederick passed near St. Croix in early September of 1979. Before the hurricanes hit, the "Good Times" was moved to a storm mooring in the area of the Yacht Club. According to the affidavit of Ed Rondo, the vessel was fine after the first hurricane (David). After hurricane Frederick passed, however, the port engine would not start. The boat was moved to St. Croix Marine Yard in October, where it was found that saltwater entering the port engine had damaged it. That engine was replaced.

Mr. Rondo orally notified the insurers of the damage on October 29, 1979, and filed a written claim on November 12, 1979. The full amount of the insurance claim is $8,617.55. This claim was denied by the insurance carrier, and thus this dispute arose.

The insurance policy covering the "Good Times" that was in effect at the time of the damage is what is commonly termed an "all risks marine insurance policy". Clearly this policy does not live up to its name, or this suit would not be. An all risks marine policy insures for all risks with exceptions: the issue here is whether the particular exceptions in the policy apply to this case.

The insurance company refused to pay the claim on the following bases:

(1) the wear and tear exclusion of the policy;

(2) the seaworthiness exclusion of the policy;

(3) the clause which states that damages caused by want of due diligence of the owner or assured is not covered, although negligence of masters, mariners, engineers or pilots is;

(4) improper notice of loss as required by the policy.

The relevant language of the insurance policy applicable to the insurer's denial of coverage is as follows:

*Perils*—Except as may be excluded elsewhere in this policy the insurance provided by this Section covers against:

(a) All risks of direct physical loss or damage to the described property from any external cause . . .

(b) Physical loss or damage to the described property directly caused by the following:

. . .

(2) Negligence of masters, mariners, engineers, or pilots; provided such loss or damage has not resulted from want of due diligence by the owner of the Yacht or by the Assured.

*Exclusions*—This insurance does not insure against:

(a) Wear and tear, gradual deterioration, weathering, insects, vermin, mold, marine growth, marine borers or unseaworthiness . . .

. . .

*Action Against Company*—No action shall lie against the Company, unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this insurance, nor until thirty days after the required proofs of claim have been filed with the Company.

. . .

*Notice of Loss*—The Insured shall as soon as practicable report in writing to the Company or its agent every loss, damage or occurrence which may give rise to a claim under this policy and

573

shall also file with the Company or its agent within ninety (90) days from date of discovery of such loss, damage or occurrence, a detailed sworn proof of loss.

The plaintiff has addressed each of the four bases for noncoverage and contended that as to each there is no genuine issue of material fact between the parties and that as a matter of law plaintiff is entitled to judgment. This Court will address each ground in turn also.

■ However, there are two issues which should be clarified initially. First it is settled that any ambiguity or contradiction in an insurance policy must be construed against the insurer, and in a manner which is more favorable to coverage; and if there is more than one reasonable reading of a policy provision, that provision must be construed against the insurance company which has drafted it. Buntin v. Continental Insurance Co., 583 F.2d 1201, 1207 (3d Cir. 1978).

■ Second, the question of burden of persuasion arises even at this summary judgment stage. For example, if neither party will be able to present evidence on an issue, the party with the burden of persuasion may have summary judgment entered against it on that issue. Ordinarily the burden of persuasion in a case where the question is one of insurance coverage is on the party attempting to show that there was coverage. Fireman's Fund Insurance Co. v. Videfreeze Corp., 540 F.2d 1171, 1175–76 (3d Cir. 1976). However, the nature of an "all risks" marine insurance policy reverses that rule. The usual rule in most jurisdictions is that an "all risks" insured need only prove loss or damage to the insured property, the burden then shifting to the insurer to prove that the loss arose from a cause that is excluded under the policy. Dow Chemical Co. v. Royal Indemnity Co., 635 F.2d 379, 386 n.8 (5th Cir. 1981). See also Morrison Grain Co., Inc. v. Utica Mutual Insurance Co., 446 F.Supp. 415, 420 (M.D. Fla. 1977); 88 A.L.R.2d 1130 (1963). This Court adopts this majority rule of placing the burden of persuasion on the insurer to show that a loss to a vessel insured under an "all risks" policy was caused by one of the enumerated exceptions to coverage.

Manufacturers Trust Insurance Company has advanced four grounds for its position that this claim is not covered by its policy. These will be treated independently.

First, the insurer argues that the wear and tear exclusion should apply. Its position is that if certain flaps or risers were properly maintained the engine damage could not have occurred. The insurer

argues that wear and tear was the cause of the failure of the flaps to work and the engine to be damaged.

■ Defendant insurer has not mentioned any factual evidence it plans to offer as to lack of maintenance of the flaps or risers. Rather, it seems that the insurer's argument will be a theoretical one: that the damage could not have occurred absent the malfunctioning of the flaps or risers, and that wear and tear was the cause of this malfunctioning. The question for this Court is whether a reasonable fact-finder could find this to be so without any factual evidence of the actual condition of the flaps or risers. The Court finds that it possibly could be inferred that wear and tear was the cause of damage here. As defendant notes in its memorandum, there is some confusion among the various statements of different individuals as to exactly how this engine damage occurred. It seems clear that saltwater entered the port engine; but why this happened, and why only one of the two engines was affected, is unclear. Given this factual confusion, and the possibility that disputed facts may have a bearing on the issues here, summary judgment is inappropriate at this time on the question of whether the wear and tear exclusion to coverage may apply.

One possible point of confusion in this case is the question of causation. One could point to several possible "causes" of the damage here: saltwater in the engine, malfunctioning of flaps or risers, malfunctioning of the bilge pump, Hurricane Frederick, or unusually high waves. Each of these is a possible "cause" in a different way. A "cause" of damage here is anything out of the ordinary which leads to the damage. It is not up to plaintiff to show the cause of damage, e.g. that the hurricane was the cause. For the wear and tear exclusion to apply the damage from wear and tear must be such that would occur in the context of the ordinary stress of wind, wave, and weather which the vessel might normally be expected to encounter. Thus, a showing that there was wear and tear such that during the extraordinary weather that a passing hurricane might bring damage was caused would not be sufficient to bring such damage under the wear and tear exception. As a practical matter then, the defendant must show that there was wear and tear such that absent abnormal conditions the damage would have occurred.

■ The second ground for denial of reimbursement for this insurance claim is the exclusion: "This insurance does not insure against . . . unseaworthiness." The definition of unseaworthy in Black's Law Dictionary (5th ed. 1979) at 1380 states in part:

575

> A vessel which is unable to withstand the perils of an ordinary voyage at sea.

Seaworthiness means the ability to withstand the ordinary stress of wind, wave and weather which the vessel might normally be expected to encounter. 5A Appleman on Insurance § 3273; S. C. Mathis v. Hanover Insurance Company, 127 Ga. App. 89, 192 S.E.2d 510 (Ga. 1972).

■ Plaintiff's memorandum discusses the traditional implied warranty of seaworthiness of an insured in light of the S. C. Mathis case. That decision refrained from reading into an all risks yacht policy where the use of the vessel was restricted to private pleasure the traditional maritime insurance warranty of seaworthiness by the insured. The Court stated that:

> The most the applicant for insurance can be said to warrant is that the boat is presently afloat (if in the water) and that he presently knows of no reason why it should sink. 192 S.E.2d at 512.

The question of the traditional warranty of seaworthiness, though, is not completely apposite to this case. This Court is not concerned here with a warranty of seaworthiness, but whether an exclusion for unseaworthiness in the insurance policy applies. The insurer has the burden of persuasion that the damage was due to unseaworthiness. Thus the insurer must show that the damage would have happened under ordinary conditions. Plaintiff has not shown that this will be impossible as a matter of law. Defendant claims that the damage to the port engine must have occurred because the flaps and risers of the exhaust system did not work, either because of disrepair or because they were not in place. While the Court cannot evaluate this claim at the moment, it may well be relevant on the issue of unseaworthiness. Thus summary judgment is not appropriate on this issue.

Third, plaintiff insured contends that there is no possibility of noncoverage under the "Inchmaree" clause (so named because this clause was first inserted into marine insurance policies after a decision by the House of Lords in Thames & Mersey Marine Ins. Co. v. Hamilton, Fraser & Co., 12 App. Cas. 484 (1887)—the vessel involved in that case was the S.S. Inchmaree). Under that clause physical loss or damage caused directly by negligence of a master, mariner, engineer or pilot is covered by insurance, "provided such loss or damages has not resulted from want of due diligence by the

owner of the Yacht or by the Assured." The yacht owner and assured at the time of the damage were the same: MacMary Corporation. Robert McKenna was the President of the Corporation at the time. There has been no allegation or evidence of lack of due diligence on the part of either the MacMary Corporation or Mr. McKenna. On this point, defendant's memorandum states:

> Similarly, the "owner negligence" or Inchmaree Clause" portions of Plaintiff's argument is largely dependent on resolution of the factual issues in this case. It is not enough to say, as plaintiff seems to do, that no matter what the nature and degree of Ed Rondo's negligence, or that of any other of plaintiff's agents, MacMary Corporation is insulated from that negligence and is entitled to compensation from defendant. This too requires a factual resolution. See e.g. Vining v. Security Insurance Company of New Haven, 252 So. 2d 754 (La. App. 1971).

■ Here, defendant has not set forth any "specific facts showing that there is a genuine issue for trial", as mandated by Rule 56(e), Fed. R. Civ. P. The affidavit of Mr. Rondo states that he was the ship's master at the time of damage. Mr. McKenna's affidavit states that he was off-island at the time of damage and that Ed Rondo was responsible for the "Good Times" as shipmaster. There is simply no basis presented by the defendant that could sustain a finding that the damage here was caused by a want of due diligence by the boat owner or assured. The cited case is inapposite, the Court in Vining noting that the policy involved was not an all-risks policy. Summary judgment is warranted on this issue.

Fourth, defendant claims as a ground for denial of coverage improper notice of loss by plaintiff. The damage was apparently caused on or about September 5, 1979. The affidavit of Ed Rondo states that after Hurricane Frederick passed he went to the vessel but could not start it. After the boat was towed to the dock its batteries were charged. The starboard engine started, the port engine did not. It appears that sometime in late October the boat was taken to the St. Croix Marine Yard for repair. After Ed Rondo was notified by St. Croix Marine that the cause of engine damage was saltwater in the engine, he notified the insurance company of the damage: orally on October 29, 1979, and in writing on November 12, 1979.

The insurance policy provides that the insured shall "as soon as practicable" notify the insurance company in writing of any loss which may give rise to a claim, and also file with the company a

detailed sworn proof of loss within 90 days. The sworn proof of loss was filed well within the ninety days; the question remains whether the insured notified the insurer in writing "as soon as practicable". However, this question need not be addressed at this time, since this Court finds that the disclaimer of coverage in this case on other grounds waived any disclaimer of coverage on the basis of improper notice.

It is a general rule that a denial of liability by an insurer, made during the period prescribed by the policy for the presentation of proofs of loss, and on grounds not relating to the proofs, will operate as a waiver of the provision of the policy requiring the proofs to be presented or as a waiver of the insufficiency of the proofs or of defects therein. 14 Couch on Insurance 2d, § 49:812 (and numerous cases cited therein); 44 Am.Jur.2d, Insurance, § 1514 (1969). The rationale for this rule is that where it is clear that the insurer will not pay in any event, it is absurd to require the insured to do acts which will prove useless. Brandon v. Nationwide Mutual Fire Insurance Co., 271 S.E.2d 380, 384 (1980); Adams v. Northwest Farm Bureau Insurance Co., 40 Or. App. 159, 594 P.2d 1256, 1260 (1979).

The Courts are split as to the effect of a denial of liability by an insurer after the time has elapsed for the presentation of proofs of loss. 14 Couch on Insurance 2d § 49:813; 44 Am.Jur.2d, Insurance, § 1515 (1969). Some find a waiver of the requirements of proof of loss, some do not.

Denial of coverage appears to have been first communicated in a letter dated December 26, 1979, after the 90 days from date of loss allowed for filing of proofs of loss. This is not especially significant in this case inasmuch as the only controversy centers around the timing of notice, not proofs of loss. While the above rules relate to proofs of loss and not specifically to notice, the issues are sufficiently close so that the rules have application to both issues. Indeed, the rule is stated in 45 C.J.S. § 1062 (1946):

> Ordinarily, insurer under a policy of liability insurance is precluded from resisting recovery on the ground of departure from policy provisions respecting notice and the forwarding of papers where it has denied on some other ground.

This Court accepts this as the best rule: where an insurer disclaims coverage based on another ground, a defense based on improper notice is thereby waived. Rock Transport Properties Corp. v. Hart-

ford Fire Insurance Co., 433 F.2d 152 (2d Cir. 1970); John Alt Furniture Co. v. Maryland Casualty Co., 88 F.2d 36 (8th Cir. 1937). The timing of the other claim, before, after or at the same time as the improper notice claim, is not important: an improper notice claim and a claim based on another ground are mutually exclusive.

The rationale for this rule is quite different from the argument of "uselessness" where coverage is disclaimed before the time limit for submission of proofs of loss. Rather it is closely involved with the necessity of prejudice to the insurer before improper notice can sustain a forfeiture of coverage.

 Courts generally are split on the question of whether prejudice to the insurer is necessary for denial of coverage where notice has been delayed. 44 Am.Jur.2d, Insurance, § 1463 (1969); 17 A.L.R.3d 530ff. However, Virgin Islands law is clear on this issue. In the Virgin Islands, the violation of a condition concerning timely notice will not bar insurance coverage unless the insurance company can prove it had been "actually and materially prejudiced" by the insured's failure to meet the condition. Leuckel v. Federal Insurance Company, 303 F.Supp. 407 (D.V.I. 1969); LaPlace v. Sun Insurance Office, Ltd., 298 F.Supp. 764 (D.V.I. 1969). In LaPlace the Court wrote:

> The terms of an insurance policy generally are not talked over or bargained for at arm's length; the insured is charged with the policy terms because he bought the policy, not necessarily because he read or understood its terms. It must also be pointed out that what is involved here is an attempt by the insurer to forfeit the insured's coverage. The court thinks it unreasonable to allow a carrier to deny its coverage even though its position was not substantially affected by the fact that it was not promptly notified of the accident or loss. This would not only be unfair to the insured, but would be against the public interest as well.
>
> ... The better and more concrete rule is that which requires the insurer to prove by competent evidence not only that the insured breached one or more of the policy's provisions but also that the insurer was, as a consequence, actually and materially prejudiced. 298 F.Supp. at 767.

Ordinarily, the question of whether there has been actual and material prejudice sufficient for a denial of coverage to be sustained is one for the jury. General Accident Fire and Life Assurance Corp. v. Prosser, 239 F.Supp. 735 (D. Alaska 1965); State Farm Mutual

Automobile Insurance Co. v. Milam, 438 F.Supp. 227 (S.D. W.Va. 1977); Motor State Insurance Co. v. Benton, 35 Mich. App. 287, 192 N.W.2d 385 (1971); but see Colonial Gas Energy System v. Unigard Mutual Insurance Co., 441 F.Supp. 765 (N.D. Cal. 1977). However, the disclaimer of coverage here on grounds other than improper notice belies any claim of actual and material prejudice by late notice. Since the company has not been prejudiced enough to leave it at a loss to determine whether or not coverage is appropriate, any prejudice it may have experienced is insufficient for coverage forfeiture as a matter of law.[1]

 Forfeiture of coverage on the basis of insufficient notice is a harsh penalty. Formal rules such as notice rules should act as a forfeiture of an insurance contract only where the failure to abide by them puts into question the merits of the claim. The waiver rationale, then, is that by definition the only prejudice serious enough to possibly invoke the draconian penalty of forfeiture of coverage for faulty notice is prejudice to the extent that no other basis for non-coverage can be found. This rule would not cover the situation where fraud is claimed, e.g., deliberate delay in giving notice.

 Here notice was delayed until after the particular problem with the boat's engine was discovered. It appears that this time delay may have caused problems to Manufacturers Trust with its investigation of the claim. Nevertheless, it was able to deny coverage on the merits, so waiving its improper notice claim. Thus, summary judgment for plaintiff on this issue is warranted.

### ORDER

The premises having been considered and the Court being fully advised,

It is hereby ORDERED

That summary judgment for plaintiff as to the "owner negligence" and "improper notice" defenses be, and hereby is, GRANTED.

---

[1] Although Manufacturers Trust has not specifically stated that it has been prejudiced by the 55-day gap between hurricane Frederick and its being notified of the damage, this was implied in its memorandum and attached materials: there was difficulty with its choice of claims surveyor, so that the surveyor it chose was never able to view the damage; and the replaced engine was discarded without the company's inspection. These problems may have been avoided with an earlier notice.