A97A1369. CARIBBEAN LUMBER COMPANY v. PHOENIX ASSURANCE COMPANY OF NEW YORK.
(488 SE2d 718)

BIRDSONG, Presiding Judge.

Appellant Caribbean Lumber Company appeals from the order granting appellee Phoenix Assurance Company of New York's motion for summary judgment and denying summary judgment to appellant.

This is an action on an insurance policy; suit was brought to recover damages to a shipment of lumber, additional shipping and stevedoring expenses, and penalties for the loss and reasonable attorney fees pursuant to OCGA § 33-4-6. Appellee issued to appellant an open marine cargo policy, No. 34016, and also issued a special cargo policy providing insurance coverage in the amount of $111,433.61 to appellant on certain described lumber subject to special terms and conditions therein stated. Thereafter, appellant shipped lumber on the deck of a flat-deck barge towed by a tugboat. The tug sank but before it did the barge was cast adrift with the lumber on board. Another tugboat later took the barge in tow and brought it to Key West; the barge was then towed to its original destination, Haiti.

Appellant enumerates that the trial court erred in granting appellee's motion for summary judgment, denying its motion for summary judgment, denying its motion for reconsideration, and overruling its second motion for reconsideration and motion to renew its motion for summary judgment. *Held*:

1. The applicable summary judgment standard is that of *Lau's*

*Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474). While there is very little Georgia law on marine insurance, general maritime law governs the construction of these policies (*Mathis v. Hanover Ins. Co.*, 127 Ga. App. 89, 90 (192 SE2d 510)); "in the absence of extensive Georgia law on maritime issues, general principles will apply." *Tugalo Dev. Corp. v. Ins. Co. &c.*, 132 Ga. App. 495, 497 (2) (208 SE2d 502).

2. Appellant contends that the trial court erred in concluding that the open cargo policy did not provide coverage for shipments on barges, unless used as a local connecting conveyance, because there was also a special cargo policy covering this particular voyage. The special cargo policy expressly provides: "This company [appellee Phoenix], in consideration of an agreed premium and *subject to the terms and conditions below* . . . does insure [appellant] Caribbean Lumber Company in the sum of [$111,433.61] on [the described 222,023 board feet of lumber], valued at sum insured, *to be shipped subject to an 'Under Deck' Bill of Lading* unless otherwise specified hereon, by Barge N-102 or other vessel or conveyance . . . at and from interior Florida via Pensacola to interior Haiti via Port Au Prince. Loss, if any, payable to the order of the assured." (Emphasis supplied.) Immediately thereafter the following "SPECIAL TERMS AND CONDITIONS" are stated: "SHIPMENTS ON DECK . . . when insured under this policy are subject to average terms and conditions specified in clauses 18, 19, and 20 hereof. *SHIPMENTS SUBJECT TO AN 'UNDER DECK' BILL OF LADING* AND SHIPMENTS IN CONTAINERS SUBJECT TO AN 'UNDER DECK' BILL OF LADING OR A BILL OF LADING WHICH DOES NOT DISCLOSE THE NATURE OF STOWAGE *ARE INSURED As per Terms and Conditions contained in Open Policy R-34016.*" (Emphasis supplied.) The terms of this policy clearly state that the insured lumber shipment is to be shipped pursuant to an "under deck" bill of lading; the effect of this contractual provision, as clearly provided by the "special terms and conditions" of the special cargo policy, was to make the scope of coverage provided by that policy for the "under deck" lumber shipment subject to and controlled by the terms and conditions of the open cargo policy. Further, the special cargo policy does not on its face provide coverage for an "on deck" lumber shipment. "When[, as in this case,] the language in an insurance policy is clear, an insurance policy is interpreted according to its plain language and express terms, just like any other contract." *Williams v. Fallaize Ins. Agency*, 220 Ga. App. 411, 414 (2) (469 SE2d 752).

3. The coverage provided by the open marine cargo policy "is against the perils of the seas . . . jettisons . . . and all other like perils, losses or misfortunes that have or shall come to the hurt, detriment or damage of the property insured hereunder or any part

thereof except as otherwise provided for herein." Further, "this policy is made and accepted subject to the . . . insuring agreements and conditions AS PER FORM ATTACHED and such other provisions and conditions as may be endorsed hereon or attached hereto."

(a) Attached to and made a part of Policy No. R-34016, dated May 15, 1990 are certain "Insuring Agreements And Conditions," which provide in bold print: **"The provisions contained herein shall override anything inconsistent therewith in the Policy to which this form is attached."** Thereafter the following conditions appear regarding the scope of coverage provided for certain conveyances: "This policy covers shipments by the following conveyances: — (a) Iron or steel steamers and iron or steel motor vessels and connecting conveyances by land or otherwise, *but excluding barges* and sailing vessels with or without auxiliary power, except as local connecting conveyances." (Emphasis supplied.) In view of this plain and unequivocal provision, the trial court, without attempting to re-write the contract through strained interpretation, construed the open marine cargo policy as expressly excluding from coverage appellant's lumber "shipment" on the deck of a barge. See generally *Williams*, supra. In view of the plain "override" language in this provision, we find that the trial court did not err in its rulings granting summary judgment to appellee insurer, in denying appellant's motion for summary judgment, and in denying appellant's various motions for reconsideration. While this result may impose an economic hardship on appellant, "[i]t is the duty of this Court to see that justice is fairly dispensed to all parties concerned, and this creates an equally important judicial obligation not to render judgments born only of generosity or compassion." *Stegall v. Central Ga. Elec. &c. Corp.*, 221 Ga. App. 187, 191 (2) (470 SE2d 782).

(b) Appellant, however, contends it is entitled to recover under the "Timber Trade Federation" clauses of the open marine cargo policy. We find this contention unpersuasive in view of our holding in Division 3 (a) above.

Moreover, paragraph 6 (a) of the "Timber Trade Federation" clauses contained in the open marine cargo policy provides: "This insurance is against all risks of loss of or damage to the subject-matter insured but shall in no case be deemed to extend to cover loss damage or expense proximately caused by delay or inherent vice or nature of the subject-matter insured." However, this all-risk coverage was expressly written "excluding water damage as respects lumber shipped on deck, unless recoverable under F.P.A.E.C. [Free of Particular Average — English Conditions] terms." The F.P.A. clause of the open marine cargo policy pertinently provides as follows: "Warranted free from Particular Average unless the vessel or craft be stranded, sunk, or burnt." The phrase, warranted free from particular average,

exempts the underwriter from liability for all partial losses, except as otherwise provided by the open marine cargo policy. *Larsen v. Ins. Co. of N.A.*, 252 FSupp. 458, 470 (6) (W.D. Wash. N.D.), aff'd 362 F2d 261 (USCA, 9th Cir.). Thus, under this clause appellee was exempted from liability for the alleged partial loss, unless the barge was stranded, sunk, or burnt.

(1) Appellant contends that the barge must be classified as having been sunk. In this regard, appellant asserts that, under a flotilla concept, the tug and barge constituted one vessel. Thus, appellant asserts that when the tug sank the barge also sank.

We find that all of the federal cases cited by appellant in support of its various appellate contentions, including *Torvanger*, 1933 AMC 683 (S.D.N.Y.), to be distinguishable from the circumstances of the case at bar. Nor are we aware of any federal or sister state precedent directly in point with the facts of this case. We decline to expand the flotilla concept so as to make tug and tow one vessel, as a matter of law, for such maritime insurance purposes. Each case must be determined by its own facts. *In the Matter of Midland Enterprises*, 296 FSupp. 1356, 1360 (S.D. Ohio). Under the facts of this case, the flotilla concept does not so apply. Cf. *The J. P. Donaldson*, 167 U. S. 599 (1) (17 SC 951, 42 LE 292) (tug and barge not to be treated as a single maritime adventure within the scope of the law of general average); *Tug Ocean Prince v. United States*, 436 FSupp. 907 (S.D.N.Y.).

Additionally, the words "vessel" and "sunk," as used in the F.P.A. clause of the open marine cargo policy, are not used as words of technical meaning, words of art, or words having a unique trade or business signification; rather the words are used in the insurance contract in their usual or common signification. See generally OCGA § 13-2-2 (2). When so used it is apparent that it was intended by the parties, under the open marine cargo policy's F.P.A.E.C. terms, that the barge itself, being a separate flat-bottomed vessel, would have to sink before appellant could claim that the damage suffered to its on-deck cargo was compensable due to a sinking.

(2) Next appellant contends that the barge was stranded within the meaning of the F.P.A. clause. We disagree. Appellant's contention that the barge was "stranded" is without merit. "Stranding is a peril of the sea. Stranding means the taking ground of a ship not in the ordinary course of navigation, but by accident, or the force of the wind or sea, and remaining stationary for some time." 43 AmJur2d § 693, Insurance. This definition is not inconsistent with the primary common signification of the word; stranding is the running aground of a ship upon a strand, rock, or bottom so that it is fast for a time, especially when such a running aground is accidental or done to avoid a worse impeding danger (as a sinking). Webster's Third New International Dictionary (unabridged), p. 2255. The record does not

support a finding that the barge was stranded within the meaning of the open marine cargo policy.

4. Appellant's contention that the loss is covered by a "peril of the sea" clause is without merit. The deposition of Captain Squarsich reveals that the tug, although bucking a pretty severe current, was navigating in a current only "a little stronger than it generally would be under normal circumstances." He further testified that the wind was between ten to fifteen knots earlier in the morning when the tug was seriously listing to the port side and taking a substantial amount of sea wash over the stern; however, the wind had dropped to about five knots when the tug was abandoned. The waves, at the time of listing, were four to six feet. At best these weather conditions created an ordinary peril of sea travel. " ' "In a marine policy against *the perils of the sea* the underwriter assumes only extraordinary risks, and if a vessel goes down by the ordinary action of the wind and waves, the insurer is not responsible, for the vessel is assumed to have been seaworthy." ' " (Emphasis in original.) *Dwyer v. Providence Washington Ins. Co.*, 95 Ga. App. 672, 675 (98 SE2d 592). " ' "The insurer undertakes only to indemnify against the extraordinary and unforeseen perils of the sea, not against the *ordinary* perils to which every ship must be exposed in the usual course of the voyage." ' " (Emphasis supplied.) Id. at 676. In considering what is a "peril of the sea" the question is whether the loss arose from injury from without or from weakness from within; if loss is occasioned by weakness from within then damages are not recoverable as a peril of the sea. Id. at 677. "[U]nless, otherwise stated, a marine insurance policy does not cover loss resulting from the ordinary action of wind and waves, natural decay or ordinary wear and tear of the vessel or negligence of the owner in keeping the vessel seaworthy. The classic 'perils of the sea' clause has been so interpreted time and time again. [Cits.] Even the more modern 'all risks' clause covers only extraordinary and fortuitous events and the onus remains where it would have been under a 'perils of the sea' clause." *Mathis v. Hanover Ins. Co.*, supra at 90; compare *The Cleveco*, 154 F2d 605, 612, 615 (USCA, 6th Cir.).

5. Appellant contends appellee is estopped by its conduct from denying liability for the damages, expenses and attorney fees sought, because inter alia it paid the cost of salvaging appellant's cargo following the sinking of the tug. The open marine cargo policy expressly provides that "no officer, agent, or other representative of this company shall have power to waive or be deemed to have waived any provisions or conditions of this policy unless such waiver, if any, shall be written upon or attached hereto." Moreover, "the application [of the doctrine] of estoppel as sought by the appellants would have the effect of expanding the coverage provided by the policy. ' "(T)he doctrines of implied waiver and of estoppel, based upon the conduct or

action of the insurer . . . , are not available to bring within the coverage of a policy risks expressly excluded by its terms." ' " *Kilgore v. Southern Gen. Ins. Co.*, 210 Ga. App. 434, 435-436 (2) (436 SE2d 547). The coverage of a policy cannot be extended by estoppel or by waiver. *Ballinger v. C & S Bank*, 139 Ga. App. 686, 689 (229 SE2d 498).

6. In view of our holding in Division 3 (a), above, we decline to address appellant's remaining contentions in support of its enumerations of error.

*Judgment affirmed. Ruffin and Eldridge, JJ., concur.*

DECIDED JULY 10, 1997.

*Brennan, Harris & Rominger, Edward T. Brennan*, for appellant. *Clark & Clark, Fred S. Clark*, for appellee.