### 38636. BRADLEY CENTER, INC. v. WESSNER et al.

GREGORY, Justice.

In a matter of first impression the Court of Appeals held that appellant, a private mental health hospital, may be held civilly liable for the murder of appellee's mother by appellees' father, a patient in appellant's facility. *Bradley Center v. Wessner,* 161 Ga. App. 576 (287 SE2d 716) (1982).

Briefly, the relevant facts are as follows: Appellee's father, Matthew Wessner, and appellees' mother, Linda Wessner, had experienced long-term marital problems, apparently resulting from Mrs. Wessner's extramarital affair. Because of these problems Mr. Wessner became a "voluntary" patient in appellant's facility. Two months after he was discharged from his first voluntary admission, he attempted suicide and was voluntarily admitted into appellant's facility for the second time. Under appellant's voluntary admission program, patients must agree to comply with the restrictions imposed by appellant on their activities and mobility; if a patient seeks discharge against medical advice, appellant has authority to detain him from leaving for 48 hours while they attempt to persuade him to stay. The trial court was authorized to find that during this

second period in the hospital, the treatment of Mr. Wessner revealed to appellant's staff that Mr. Wessner would likely cause bodily harm to his wife if he had the opportunity. In spite of this, Mr. Wessner was issued an unrestricted weekend pass privilege by appellant's staff. While exercising his pass, Mr. Wessner obtained his gun, confronted his wife and her paramour and shot and killed both of them. Mr. Wessner was tried and convicted of two counts of murder.

Appellees instituted this wrongful death action on the theory that their father's criminal act was reasonably foreseeable to appellant and that the death of their mother was proximately caused by appellant's negligence in issuing the weekend pass and in failing to exercise proper control over their father's freedom to leave the premises. The jury returned a substantial verdict for appellees, and the Court of Appeals affirmed.

The court found that: (1) Where the treatment of a mental patient involves an exercise of "control" over him by a physician who knows or should know that the patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient; (2) the evidence supports the trial court's finding that appellant breached its duty to exercise control over Mr. Wessner; (3) the evidence demonstrated that appellant's action was the proximate cause of the death of appellees' mother; and (4) the damages awarded to appellees were not excessive as a matter of law.

We granted certiorari to consider whether an individual other than the patient can recover for the alleged malpractice of the physician where that person is injured by the criminal conduct of the patient and there is no privity between the injured party and the physician. Because we believe the Court of Appeals correctly decided this issue, we affirm.

To state a cause of action for negligence in Georgia, the following elements are essential: "(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." *Lee Street Auto Sales v. Warren,* 102 Ga. App. 345 (1) (116 SE2d 243) (1960). Our concern here is with the first element — specifically, whether a physician can owe a legal duty of care to an injured party who was not his patient.

Appellant argues that appellees' case must fail because Georgia law strictly requires privity between the plaintiff and physician in a

medical malpractice action, citing *Buttersworth v. Swint,* 53 Ga. App. 602 (186 SE 770) (1936) and *Norton v. Hamilton,* 92 Ga. App. 727 (89 SE2d 809) (1955). It argues that this position in this physician case is supported by our case law requiring professional-client privity for the maintenance of malpractice actions against other professionals. *Hughes v. Malone,* 146 Ga. App. 341 (247 SE2d 107) (1978) (attorneys); *MacNerland v. Barnes,* 129 Ga. App. 367 (199 SE2d 564) (1973) (accountants); *Mauldin v. Sheffer,* 113 Ga. App. 874 (150 SE2d 150) (1966) (engineers). We have reviewed these cases and find that they do not preclude the cause of action set forth by appellees in this case.

The medical malpractice cases cited by appellant stand for the proposition that before a plaintiff may recover on the theory that he received negligent treatment from a defendant physician, the plaintiff must show that a doctor-patient relationship existed between them. In such cases, called "classic medical malpractice actions" by the Court of Appeals, doctor-patient privity is essential because it is this "relation which exists between physician and patient which is a result of a consensual transaction" that establishes the legal duty to conform to a standard of conduct. *Norton v. Hamilton,* 92 Ga. App. 727, 731, supra.

The legal duty in this case did not arise out of this "consensual transaction" between doctor and patient, however, so there is no basis for a requirement of privity. The legal duty in this case arises out of the general duty one owes to all the world not to subject them to an unreasonable risk of harm. This has been expressed as follows: ". . . negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm." Restatement, Torts, 2d, § 282.

We believe the Court of Appeals properly identified the legal duty in this case in that: "where the course of treatment of a mental patient involves an exercise of 'control' over him by a physician who knows or should know that the patient is likely to cause bodily harm to others, an independent duty arises from that relationship and falls upon the physician to exercise that control with such reasonable care as to prevent harm to others at the hands of the patient." *Bradley Center v. Wessner,* 161 Ga. App. 576, supra, at 581.

We agree with appellant that, as a general rule, there is no duty to control the conduct of third persons to prevent them from causing physical harm to others. *Shockley v. Zayre,* 118 Ga. App. 672 (165 SE2d 179) (1968); Restatement, Torts, 2d, § 315. We find, however, that one of the exceptions to that rule applies here because of the special relationship which existed between appellant and appellees' father: "One who takes charge of a third person whom he knows or

should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." Restatement, Torts, 2d, § 319.[1] See also Prosser, Handbook of the Law of Torts, § 56, p. 349. The jury found appellant hospital failed in this case to exercise reasonable care in the control of appellees' father. As a result, appellees' mother was killed. In such a case, a wrongful death action is proper.

By finding appellant liable we have not created a "new tort," rather we have applied our traditional tort principles of negligence to the facts of this case. We also note that the duty to conform to a standard of conduct in this case is a well-recognized and well-established principle of law in other jurisdictions. See Lipari v. Sears, Roebuck & Co., 497 FSupp. 185 (D. Neb. 1980) (applying Nebraska law); Bellavance v. State, 390 S2d 422 (Fla. App. 1980); Rum River Lumber Co. v. State, 282 NW2d 882 (Sup. Ct. of Minn. 1979); McIntosh v. Milano, 403 A2d 500 (Sup. Ct. N. J. 1979); Homere and Stillman v. State, 370 NYS2d 246 (1975); Tarasoff v. Regents of Univ. of California, 529 P2d 553 (Cal. 1974); Semler v. Psychiatric Inst., 538 F2d 121 (4th Cir. 1976) (applying Virginia law); Hicks v. United States, 511 F2d 407 (D. C. Cir. 1975); Underwood v. United States, 356 F2d 92 (5th Cir. 1966); Fair v. United States, 234 F2d 288 (5th Cir. 1956); Greenberg v. Barbour, 322 FSupp. 745 (E. D. Pa. 1971) (applying Pennsylvania law); Jones v. State, 119 A 577 (Me. 1923).

Appellant argues that this decision abandons our traditional rule that intervening criminal acts of third parties are unforeseeable and cannot give rise to liability, citing *McClendon v. C. & S. Nat. Bank,* 155 Ga. App. 755 (272 SE2d 592) (1980) and *Henderson v. Dade Coal Co.,* 100 Ga. 568 (28 SE 251) (1897). We note, however, that those cases only held that where the intervening criminal acts of third parties are unforeseeable, they will not give rise to liability. *McClendon,* supra at 756; *Henderson,* supra, at 570. There are cases such as this, however, in which the intervening criminal acts may be foreseeable. In such cases, tort liability is proper. "The general rule that the intervening criminal act of a third person will insulate a defendant from liability for an original act of negligence does not

---

[1] Of particular interest here is the second illustration accompanying this Restatement section: "2. A operates a private sanitarium for the insane. Through the negligence of the guards employed by A, B, a homicidal maniac, is permitted to escape. B attacks and causes harm to C. A is subject to liability to C." Restatement, Torts, 2d, § 319, Illustration 2.

apply when it is alleged that the defendant had reason to anticipate the criminal act." *Atlantic C. L. R. Co. v. Godard,* 211 Ga. 373, 377 (86 SE2d 311) (1955). See *Warner v. Arnold,* 133 Ga. App. 174, 177 (210 SE2d 350) (1974); *Williams v. Grier,* 196 Ga. 327, 338 (26 SE2d 698) (1943). See also Harper, F. and Kime, P., The Duty to Control the Conduct of Another, 43 *Yale Law Journal* 886, 898; Prosser, Handbook on the Law of Torts, § 44.

We do not believe, as appellant argues in his brief, that this decision will destroy the concept of privity which we have previously required in professional-client malpractice actions, thereby subjecting all professionals to potentially unlimited liability. As we stated above, this is not a malpractice case; it is an ordinary negligence case in which privity has never been an essential element. Here, appellant hospital is liable to third parties because it violated its duty owed to those third parties to conform to a given standard of conduct. See also *Bodin v. Gill,* 216 Ga. 467 (117 SE2d 325) (1960).

*Judgment affirmed. All the Justices concur, except Clarke and Weltner, JJ., who concur specially, and Jordan, C. J., and Marshall, J., who dissent.*

DECIDED OCTOBER 27, 1982.

*S. E. Kelley, J. Ronald Mullins, Sidney F. Wheeler, Michael T. Bennett, D. Keith Calhoun,* for appellant.

*Lee R. Grogan, William C. Rumer, G. Michael Agnew, Milton D. Jones,* for appellees.

UPON WITHDRAWAL OF APPELLANT'S MOTION FOR REHEARING, AND UPON CONSIDERATION OF THE COURT'S OWN MOTION.<br>(NOVEMBER 23, 1982)

WELTNER, Justice.

I concur in the judgment affirming the trial court and the jury verdict. However, I disagree with the adoption of a simple negligence standard in cases involving intervening criminal acts, for reason that few are wise enough to foretell the conduct of another, and the imposition of such a standard places upon a prudent man the requirement that he know in advance what another will do.

I would adopt and apply to this case the rule expressed in *Truelove v. Wilson,* 159 Ga. App. 906, 908 (285 SE2d 556) (1981), authorizing recovery for damages which are the direct and proximate result of conduct which evidences a wilful intention to inflict injury or which is so reckless or so charged with indifference to the

consequences as to justify the jury in finding a wantonness equivalent in spirit to actual intent.

Because in this case there was no enumeration of error relating to the trial court's charge on simple negligence, the failure of the trial court to charge the rule of *Truelove,* supra, was not presented for review on appeal, and, as the evidence in this case plainly would support a recovery under the theory of wilful and wanton conduct, the judgment should be affirmed.

I am authorized to state that Justice Clarke and Justice Bell concur herein.