A05A2134. WATSON et al. v. GENERAL MECHANICAL SERVICES, INC.

(623 SE2d 679)

ANDREWS, Presiding Judge.

Mathew Bailey Watson suffered a back injury during his employment with Applied Industrial Technologies (Applied Industrial) when he attempted to lift a heavy trash container with one arm while moving by on a forklift. After receiving workers' compensation benefits from Applied Industrial for the job-related injury, Watson sued General Mechanical Services, Inc. (General Mechanical) as a third-party tortfeasor.[1] He alleged that employees of General Mechanical doing repair work on the Applied Industrial conveyor system negligently caused his back injury by discarding heavy metal conveyor parts in the container, which was located under a sign stating that the container was only for disposal of paper or plastic. General Mechanical moved for summary judgment on various grounds including the defense that, even if its employees put the metal parts in the container, it was not liable on the negligence claim because there was no foreseeable risk of harm. The trial court granted summary judgment in favor of General Mechanical, and the Watsons appeal. For the following reasons, we affirm.

Watson operated a type of four-wheeled, motorized forklift known as an "order picker" used to pick product orders from rows of shelves at the Applied Industrial warehouse. The record shows that operators

---

[1] Watson's wife, Lashanna Watson, joined as a plaintiff in the suit alleging loss of consortium, and Pacific Employers Insurance Company, Applied Industrial's workers' compensation insurance carrier, intervened in the suit to preserve its subrogation lien against any recovery by Mathew Watson against General Mechanical.

traveled in the order pickers while standing on an attached platform carried a few inches off the floor. After traveling to the area where an order was located, operators raised the platform on which they were standing to the height of the appropriate shelf, picked the order from the shelf and placed it on a table located on the rear of the platform, then lowered the platform back down to floor level. At the end of each work shift, an order picker was used with the platform in the lowered position to pick up and empty trash containers located at the end of each row of shelves in the warehouse. Watson suffered the back injury at issue while operating an order picker for this task.

The trash containers were open, barrel-shaped plastic containers about three feet high with about a thirty- to forty-gallon capacity. According to Watson, every container had a sign over it stating that the container was only for disposal of paper or plastic. Watson testified by deposition that, while he was traveling in the order picker and steering it with his right hand from a standing position on the platform, he reached out with his left arm as he approached a trash container, grabbed it with his left hand, and attempted to pull it up onto the platform table as he passed by the container. Watson testified that picking up trash containers in this fashion while on the move was his usual method, and that no one ever told him not to do it that way. But this time, instead of containing paper and plastic and weighing only five or ten pounds, as Watson expected, the container was nearly full of discarded metal roller parts of the type used on the conveyer system at the warehouse, and weighed 80 to 100 pounds. Watson did not look into the container before attempting to lift it with one arm while passing by, so he did not know that the container had metal rollers in it and was much heavier than the usual five or ten pounds. Watson testified that, when he grabbed the trash container as he passed by, "it didn't move and it snatched [him] back" onto the table to the rear of the platform and off the order picker, injuring his back.

Watson and all other Applied Industrial order picker operators received training in the proper and safe operation of an order picker. All operators were instructed that, when the order picker was moving, they were to maintain a lookout for people or objects in their path, and were never to put hands, arms, feet, or legs outside the confines of the order picker. The warehouse manager for Applied Industrial testified that attempting to reach out to pick up the trash container while moving by it in the order picker was not a safe procedure because it distracted the operator from maintaining a lookout and posed a risk of injury to the operator. The team leader at Applied Industrial for the shift during which Watson was injured testified that it was not a safe operating procedure for Watson to attempt to lift up the trash container while the order picker was moving. Another

order picker operator who worked with Watson at Applied Industrial testified that they were trained not to place their hands or arms outside the confines of the order picker when it was moving, that he always looked inside the trash containers to determine the contents before he attempted to lift them, and that he always stopped the order picker to pick up the trash containers because "you can't drive and pick that up at the same time."

In his complaint against General Mechanical, Watson alleged that General Mechanical employees doing repair work for Applied Industrial on the warehouse conveyor system caused his back injury when they negligently discarded metal roller parts from the conveyor into the container marked for paper and plastic trash. No one saw who placed the metal rollers into the trash container, and General Mechanical employees testified that they did not put the rollers in the container. Watson, however, produced evidence that General Mechanical employees did repairs on the conveyor system prior to the accident, that no one other than General Mechanical employees worked on the conveyor system, and that the metal rollers in the container were parts from the conveyor system. Construing the evidence on summary judgment in favor of Watson, we find that there was circumstantial evidence sufficient to create an issue of fact as to whether General Mechanical employees put the metal rollers in the trash container. Nevertheless, even if General Mechanical employees put the metal rollers in the trash container knowing it was designated only for paper or plastic, this constitutes actionable negligence, as alleged by Watson, only if there is also evidence establishing the essential elements of a negligence claim.

A cause of action for negligence must contain the following essential elements:

> (1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

(Citation and punctuation omitted.) *Bradley Center, Inc. v. Wessner,* 250 Ga. 199, 200 (296 SE2d 693) (1982). The legal duty in this case arises from the general duty owed by the employees of General Mechanical not to subject Watson to an unreasonable risk of harm. Id. at 201. But negligence, to be actionable, also carries with it the concept of foreseeability. *Ga. Power Co. v. Carden,* 128 Ga. App. 347, 349 (196 SE2d 477) (1973). It follows that, to establish a breach of the

applicable standard of conduct to support a negligence action, there must be evidence that the act (or omission to act) alleged to be negligent created a *foreseeable* unreasonable risk of harm. *Ellington v. Tolar Constr. Co.*, 237 Ga. 235, 238 (227 SE2d 336) (1976). "That is, it must appear that the alleged negligent condition was such as to put an ordinarily prudent person on notice that some injury might result therefrom." (Citations omitted.) *Carden*, 128 Ga. App. at 349. "Negligence is predicated on what should be anticipated, rather than on what happened, because one is not bound to anticipate or foresee and provide against what is unlikely, remote, slightly probable, or slightly possible." (Citation omitted.) *Amos v. City of Butler*, 242 Ga. App. 505, 506 (529 SE2d 420) (2000); *Feldman v. Whipkey's Drug Shop*, 121 Ga. App. 580, 581 (174 SE2d 474) (1970).

There is no evidence that, prior to Watson's injury, an order picker operator or any other person suffered physical harm because items heavier than paper or plastic had been placed in a trash container at the warehouse. The trash container at issue was open at the top, so its contents were easily observable to anyone who looked to see what it contained before attempting to lift the container. The record shows that, when Watson attempted to lift the container while moving past it in the order picker, he did not look in the container to see that it contained objects heavier than paper and plastic, and he made no effort to ascertain what the container weighed. Moreover, by reaching out with one arm from a moving order picker, Watson operated the order picker in violation of safety procedures and attempted to lift the container in a manner that posed a danger of physical injury to himself and others. There is nothing in the record to indicate that any employee of General Mechanical should have foreseen these actions by Watson.

Although negligence and foreseeability are generally issues of fact, they may be decided as a matter of law where the relevant facts are plain and indisputable. *Bolden v. Barnes*, 117 Ga. App. 862, 863-864 (162 SE2d 307) (1968). Under the present facts, we conclude as a matter of law that the act of putting metal parts in the trash container marked for paper and plastic was not actionable negligence because it was not foreseeable that doing so would create an unreasonable risk of some type of physical injury. Because plain and indisputable facts show that General Mechanical took no action through its employees which breached its legal duty not to expose Watson to an unreasonable risk of harm, an essential element necessary to the negligence claim was absent, and the trial court

correctly granted summary judgment in favor of General Mechanical.[2] *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).
   *Judgment affirmed. Phipps and Mikell, JJ., concur.*

DECIDED NOVEMBER 18, 2005.

   *Goldstein & Hayes, James A. Goldstein, Jonathan P. Hayes,* for appellants.
   *Finley & Buckley, Timothy J. Buckley III, Richard P. Spencer II,* for appellee.

---

[2] The trial court also correctly granted summary judgment in favor of General Mechanical on Lashanna Watson's claim for loss of consortium because it was derivative of Mathew Watson's negligence claim. *Supchak v. Pruitt,* 232 Ga. App. 680, 684 (503 SE2d 581) (1998).