## A06A1618. WALTON v. UCC X, INC. et al.

(640 SE2d 325)

BERNES, Judge.

Wendall Walton, as the administrator of the estate of Wallace David Abernathy, sued UCC X, Inc. d/b/a Cedar Heights Apartments ("Cedar Heights") and Chastity L. Fincher for Abernathy's wrongful death. The trial court granted Cedar Heights' motion for summary judgment, and Walton appeals. We affirm for the reasons set forth below.

To prevail on a motion for summary judgment, the moving party must demonstrate that there is no genuine issue of material fact, and that the undisputed facts, viewed in a light most favorable to the party opposing the motion, warrant judgment as a matter of law. OCGA § 9-11-56 (c); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). Our review is de novo, and we view the evidence and all reasonable inferences drawn from it in the light most favorable to the nonmovant. *Supchak v. Pruitt*, 232 Ga. App. 680, 682 (1) (503 SE2d 581) (1998).

So viewed, the evidence shows that Abernathy rented an apartment from Cedar Heights in March 2001. Apartments at the complex were available for rent only to low-income persons who were 62 years of age or older. The United States Department of Housing and Urban Development ("HUD") made rental assistance payments on behalf of the tenants. The apartments were not a nursing home, and the residents were self-sufficient.

On November 20, 2003, apartment manager Rachel Bobbitt-Redding notified residents that the parking lot was scheduled to be resurfaced. According to the notice, "[residents] will all have to park [their] vehicles across the street," beginning on the afternoon of November 24, 2003, and all day on November 25, 2003. On the evening of November 25, 2003, 82-year-old Abernathy parked his truck in a lot across the highway that ran in front of the entrance to the apartment complex, and he was struck and killed by a motorist's car as he attempted to cross the highway on foot. The lot on which Abernathy had been directed to park was owned by a third party, Roger Tillary, but neither Bobbitt-Redding nor any other Cedar Heights' representative had sought Tillary's permission for apartment residents to park on his property.

1. Walton contends that the trial court erred in concluding that HUD regulations do not support a cause of action for negligence per se in this case. We do not agree.

> Generally, a plaintiff may assert a claim of negligence per se arising from violations of federal or state statutes as long as (1) that plaintiff falls within the class of persons the

statute was intended to protect; (2) the harm complained of was the same harm the statute was intended to guard against; and (3) the violation of the statute proximately caused the plaintiff's injury. The violation of a regulation, no less than that of a statute, can likewise establish that a defendant breached a duty owed to a plaintiff as a matter of law.

(Footnotes omitted.) *McLain v. Mariner Health Care*, 279 Ga. App. 410, 411 (2) (631 SE2d 435) (2006) (considering negligence per se claim based on violation of Medicare and Medicaid regulations). See also *Tanner v. Rebel Aviation*, 146 Ga. App. 110, 113 (1) (245 SE2d 463) (1978) (considering whether Federal Aviation Administration regulations were passed for appellant's benefit).

The lease agreement between Cedar Heights and Abernathy shows that HUD provided Cedar Heights with financing under section 202 of the Housing Act of 1959 and rent subsidies under Section 8 of the Housing Act of 1937. See 12 USC § 1701q; 42 USC § 1437f. Walton contends, and Cedar Heights does not dispute, that certain federal regulations are therefore applicable to the apartments. 24 CFR § 5.703 provides that "HUD housing must be decent, safe, sanitary and in good repair. Owners . . . must maintain such housing in a manner that meets the physical condition standards set forth in this section in order to be considered decent, safe, sanitary and in good repair." See also 24 CFR § 891.180. These standards include, as relied upon by Walton, that "[t]he site must not be subject to material adverse conditions," 24 CFR § 5.703 (a), and "[a]ll areas and components of the housing must be free of health and safety hazards." 24 CFR § 5.703 (f).

Walton also points to the fact that applicable regulations require that "[t]he owner must maintain the unit in accordance with [Housing Quality Standards]." 24 CFR § 982.404. These "HQS" regulations include that "[t]he site and neighborhood must be reasonably free from . . . dangers to the health, safety, and general welfare of the occupants." 24 CFR § 982.401 (l) (1). Further, "[t]he site and neighborhood may not be subject to serious adverse environmental conditions, natural or manmade, such as . . . excessive noise, vibration or vehicular traffic." 24 CFR § 982.401 (l) (2). Finally, "[t]he dwelling unit must be able to be used and maintained without unauthorized use of other private properties." 24 CFR § 982.401 (k).

We agree with the trial court that Walton's allegations do not afford a basis for Walton to show that Cedar Heights was negligent per se. Even if Abernathy was within the class of persons intended to be protected by the HUD regulations, the harm complained of is not the harm that the regulations were intended to guard against. Under

the common law, an owner or occupier of land has no duty to protect against harms occurring on public roadways or premises owned by third parties, when the owner or occupier has not exercised any control over the roadway or premises. See OCGA § 51-3-1; *Zumbado v. Lincoln Property Co.*, 209 Ga. App. 163, 164-165 (2) (b) (433 SE2d 301) (1993); *Reed v. Ed Taylor Constr. Co.*, 198 Ga. App. 595, 597 (402 SE2d 346) (1991); *Housing Auth. of Atlanta v. Famble*, 170 Ga. App. 509, 522 (2) (317 SE2d 853) (1984); *Spindel v. Gulf Oil Corp.*, 100 Ga. App. 323, 326 (1) (111 SE2d 160) (1959). We do not believe that the HUD regulations — the primary purpose of which was to set forth the requirements that property owners must meet to receive public subsidies[1] — were intended to eviscerate this common law principle. Thus, we conclude that the HUD regulations were not intended to protect tenants against harms arising off the HUD-regulated premises. In the present case, it is undisputed that Abernathy was not harmed on premises owned, occupied, or controlled by Cedar Heights. Moreover, the only relevant on-site activity, which was the parking lot resurfacing, was not shown to constitute a dangerous or hazardous condition. Accordingly, Walton's allegations are insufficient to sustain a claim for negligence per se based upon the HUD regulations.

2. Walton further contends that evidence of Cedar Heights' violation of OCGA § 30-5-8 (a) (1), which provides that "it shall be unlawful for any person to abuse, neglect, or exploit any disabled adult or elder person," was sufficient to support his claim of negligence per se. We disagree.

For purposes of OCGA § 30-5-8 (a), an "elder person" is defined as "a person 65 years of age or older who is not a resident of a long-term care facility." OCGA § 30-5-3 (7.1). Neglect requires "the absence or omission of essential services" to an elder person, and abuse includes "the willful deprivation of essential services" to an elder person. OCGA § 30-5-3 (1), (10). "Essential services" are defined as "social, medical, psychiatric, or legal services necessary to safeguard the . . . elder person's rights and resources and to maintain the physical and mental well-being of such person. These services shall include . . . protection from health and safety hazards. . . ." OCGA § 30-5-3 (8).

Walton contends that Cedar Heights deprived Abernathy of an "essential service" by taking away a safe means of ingress and egress to his apartment. Although Cedar Heights barred Abernathy for a temporary period from parking his car on the apartment property, we cannot conclude that continuous and uninterrupted parking privileges constitutes an essential service under OCGA § 30-5-8 (a) such that its negligent or intentional deprivation constitutes a violation of

---

[1] See generally *Banks v. Dallas Housing Auth.*, 271 F3d 605, 609-610 (5th Cir. 2001).

OCGA § 30-5-8 (a) (1). Parking, in and of itself, is not a "social, medical, psychiatric, or legal service[ ]," nor can we conclude that continuous parking access was "necessary to safeguard [Abernathy's] rights and resources and to maintain [his] physical and mental well-being." OCGA § 30-5-3 (8). It follows that the trial court correctly concluded that Walton could not show that Cedar Heights was negligent per se on account of a violation of OCGA § 30-5-8 (a).

3. Walton further contends that Cedar Heights breached a common law duty not to injure Abernathy. Again, we disagree.

"Whether a duty exists upon which liability can be based is a question of law." (Citation and punctuation omitted.) *Barnes v. St. Stephen's Missionary Baptist Church*, 260 Ga. App. 765, 767 (1) (580 SE2d 587) (2003). "Regardless of the age or capacity of the injured person, if there is no breach of any legal duty on the part of the defendant toward such person, there can be no legal liability." (Citation and punctuation omitted.) *Winchester v. Sun Valley-Atlanta Assoc.*, 206 Ga. App. 140, 142 (2) (424 SE2d 85) (1992).

Walton shows no special or fiduciary relationship between Cedar Heights and Abernathy; rather, the relationship was one of landlord and tenant. As previously indicated, Cedar Heights' duty to exercise ordinary care in keeping its premises and approaches safe for invitees did not extend to the public highway on which Abernathy was injured because there was no evidence that Cedar Heights exercised any control over the highway. See OCGA § 51-3-1; *Zumbado*, 209 Ga. App. at 164-165 (2) (b); *Reed*, 198 Ga. App. at 597.

Walton does not, however, attempt to show that Cedar Heights' duty arose under any principle of premises liability. Citing *Bradley Center v. Wessner*, 250 Ga. 199, 201 (296 SE2d 693) (1982), Walton argues that Cedar Heights breached "the general duty one owes to all the world not to subject them to an unreasonable risk of harm." Id. *Wessner* is factually and legally inapposite, as the case involved a mental patient who murdered his wife after being released by the defendant on a weekend pass. Id. at 199-200. The control that the defendant exercised over the mental patient in *Wessner* is lacking here. Cedar Heights did not control the highway on which Abernathy was injured, nor did it control the manner in which Abernathy chose to cross the highway or prevent Abernathy from making other transportation arrangements to reach his apartment. Thus, there is no evidence that Cedar Heights breached a common law duty to Abernathy.

4. Walton also contends that he established a cause of action pursuant to OCGA § 51-1-8, which states: "Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action." We are unpersuaded.

Walton argues that Abernathy had a contractual right to use the parking lot and that Cedar Heights' breach of the contract further violated its independent duty to avoid harming Abernathy. However, the right to parking was not part of the lease agreement. Even if we assume that uninterrupted use of a parking lot was necessarily implied by the lease, and that Walton breached the lease by temporarily closing the lot for resurfacing, "recovery in tort requires proof of not merely a breach of a contract term, but breach of a duty imposed by law — i.e., either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of our appellate courts." (Citations and punctuation omitted.) *Peterson v. First Clayton Bank &c.*, 214 Ga. App. 94, 99 (1) (b) (447 SE2d 63) (1994). See also *Constr. Lender v. Sutter*, 228 Ga. App. 405, 409 (2) (491 SE2d 853) (1997) (breach of the contract term is insufficient to create a tort cause of action in the absence of defendant's breach of an independent duty created by statute or common law). We find no general duty imposed by law on a landlord to provide uninterrupted parking to tenants. As discussed above, Walton also failed to show that Cedar Heights breached other common law or statutory duties to Abernathy. It follows that Walton failed to show that he had a cause of action in tort arising from a breach of the lease contract.

5. Finally, Walton contends that the trial court erred in ruling that Abernathy assumed the risk of injury or death by crossing the highway, even if Cedar Heights did breach a legal duty owed to him. In light of our previous rulings, we need not address this contention.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 22, 2006 —
RECONSIDERATION DENIED DECEMBER 12, 2006 — 

*Gammon, Anderson & McFall, W. Wright Gammon, Jr.*, for appellant.

*Goodman, McGuffey, Lindsey & Johnson, Thomas J. Lehman, Brinson, Askew, Berry, Seigler, Richardson & Davis, Mark M. J. Webb*, for appellees.