Dillard, Judge,
dissenting.
I respectfully dissent. The trial court erred in denying GGS’s motion for directed verdict because, contrary to the majority’s holding, J. B. could not prove liability by negligence per se or professional negligence for the reasons set forth infra.
(a) Negligence Per Se. I disagree that GGS could, under the facts of this case, be liable for negligence per se by its violation of OCGA § 43-11-21.1, which regulates the administration of deep sedation and general anesthesia. In pertinent part, OCGA § 43-11-21.1 prohibits dentists from “administer [ing] general anesthesia on an outpatient *428 basis unless such dentist has been issued a permit by the board under the conditions specified in this Code section.”[1]
Permits under OCGA § 43-11-21.1 are only issued to a dentist who has “successfully completed a minimum of one year of advanced training in anesthesiology and related academic subjects beyond the undergraduate dental school level” at specific institutions or who is “a diplómate of the American Board of Oral and Maxillofacial Surgery, is a member of the American Association of Oral and Maxillofacial Surgeons, or is a fellow of the American Dental Society of Anesthesiology.”[2] Additionally, in order to receive a permit, the dentist must utilize a “properly equipped facility for the administration of general anesthesia, including physical plant and equipment which has been evaluated and certified by an on-site examination[,]”[3] and have “demonstrated to the satisfaction of the board or any designee thereof proficiency in administering general anesthesia on a patient or patients in the dentist’s office in a safe and effective manner.”[4]
OCGA § 43-11-21.1 does not “prohibit a personwho is duly licensed to practice medicine in this state and who is a member of the anesthesiology staff of an institution classified as a hospital and issued a permit as an institution under Code Section 31-7-1 from administering general anesthesia in a dental facility.”[5] Nor does this statutory provision prohibit licensed CRNAs, such as Serdula, “from administering general anesthesia in a dental facility, provided that such anesthesia is administered under the direction and responsibility of a dentist duly permitted under this Code section . . . .”[6]
Here, it is undisputed, and the majority concedes, that J. B. suffered no medical complications as a result of receiving anesthesia at GGS. Nevertheless, the majority accepts J. B.’s argument that Drs. Salama and Garber did not “appreciate [her] level of sedation and attendant vulnerability,” and holds that OCGA § 43-11-21.1
encompasses both medical and nonmedical dangers that could arise where, as here, a dentist is incapable of adequately supervising a certified registered nurse anesthetist, including the increased risk of a patient to abuse when the patient is placed under a greater level of sedation than necessary for a greater amount of time than necessary.[7]
*429 Thus, the majority holds, in essence, that Drs. Salama and Garber’s lack of the necessary permits and the anesthesiology training required to obtain such permits resulted in Serdula’s act of sexual assault because he administered anesthesia to J. B. while under the direction and responsibility of dentists who were not permitted in accordance with OCGA § 43-11-21.1.1 disagree with the majority’s conclusions.
To begin with, when the law requires a person to “perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.”[8] But even assuming that a statute or mandatory regulation has been violated, before negligence per se can be determined, a court must consider “(1) whether the injured person falls within the class of persons it was [designed] to protect and (2) whether the harm complained of was the harm the statute was [designed] to guard against.”[9]
Here, it is true that Drs. Salama and Garber admitted that they were operating in violation of OCGA § 43-11-21.1 when they did not possess the required permits. And it is undisputed that J. B. falls within the class of persons the statute was designed to protect. But the harm she suffered — i.e., sexual assault by CRNA Serdula — is not the type of harm that the statute was designed to guard against.
Looking to the plain language of OCGA § 43-11-21.1, it is clear that the harm the statute is designed to guard against is not sexual assault while under the effects of anesthesia, but is instead the improper administration of anesthesia itself due to inadequate training, lack of experience, and/or the improper use of equipment, which can result in medical complications.[10] As pointed out by GGS, if this *430 statute were designed to protect against sexual assault while under the effects of anesthesia, there is no conceivable reason why an anesthesiologist would be permitted to administer sedation without supervision while a CRNA may only do so “under the direction and responsibility of a dentist” who is duly permitted.[11] And while OCGA § 43-11-2 (e) declares that “such unlicensed activities as are mentioned in this chapter are a menace and a nuisance dangerous to the public health, safety, and welfare,” this text cannot plausibly be interpreted as evincing a legislative design to protect patients against sexual assault when the very same text appears in a statute that applies to barbers and cosmetologists.[12] Accordingly, under the particular facts of this case, contrary to the majority’s holding, J. B. could not show, as a matter of law, that GGS was liable for negligence per se by violating OCGA § 43-11-21.1.[13]
(b) Professional Negligence. The majority also accepts J. B.’s argument that GGS is liable for professional negligence by breaching the standard of care when its staff did not recognize J. B.’s level of sedation and left her, a female patient, alone under sedation with Serdula, a male CRNA, thereby providing him with the opportunity to perpetrate his criminal acts.[14] Again, I disagree.
Negligence is “not actionable unless it is the proximate cause of *431 the injury.”[15] And proximate cause is that which, “in the natural and continuous sequence, unbroken by other causes, produces an event, and without which the event would not have occurred.”[16] Proximate cause acts as “a limit on legal liability; it is a policy decision that, for a variety of reasons, . . . the defendant’s conduct and the plaintiff’s injury are too remote for the law to countenance recovery.”[17] One such reason can be the occurrence of an intervening act that breaks the causal connection.
On the issue of intervening acts, the Supreme Court of Georgia has explained that the general rule is that “if, subsequently to an original wrongful act, a new cause has intervened, of itself sufficient to stand as the cause of the misfortune, the former must be considered as too remote [,]”[18] But if the character of the intervening act is such that “its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrongdoer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act.”[19] This latter rule applies even to intervening acts of a criminal nature.[20] Thus, although the general rule is that “the intervening criminal act of a third person will insulate a defendant from liability for an original act of negligence,”[21] that rule does not *432 apply when it is alleged that “the defendant had reason to anticipate the criminal act.”[22] And here, contrary to the majority’s holding, Serdula’s intervening criminal act of sexual assault could not have been anticipated by GGS and, thus, was not foreseeable as a matter of law.[23]
According to the expert testimony at trial, patients under anesthesia are vulnerable to, inter alia, obstructed airways, cardiac arrest, allergic reactions, neurological events, and even death. Thus, according to these experts, patients who are under the effects of anesthesia should always have at least two people trained in basic life support in the room with them. The experts explained that this rule is in place because, should a medical emergency arise, one person can begin resuscitation efforts while the other calls for help; the extra personnel assist the person administering anesthesia, but also “protect the patient” and help to maintain the patient’s airway; and the rule prevents dentists in remote areas from attempting to perform procedures alone. Although J. B. contends that an anesthetized female patient should never be left alone with a male CRNA, the testimony established that gender is not a factor in the rule. Nevertheless, J. B.’s experts opined that GGS violated the standard of care by leaving J. B. alone with Serdula.
At trial, Drs. Salama and Garber and members of the GGS staff who assisted the doctors in performing the various phases of J. B.’s procedure all testified with regard to their usual practices and as to the layout of the operating room and office in general. This testimony established that the GGS operating room is located in a busy portion of the office with people entering and exiting the room at all times, and the door to the room is always open with personnel roaming about the hallway.
According to a dental assistant who participated in J. B.’s surgery, when a patient is “handed off” between procedures, an assistant will stay with the patient in the operating room or in the *433 general surgical area, but the patient is never left alone for more than one or two minutes. Dr. Salama also testified that during the transfer period, an assistant may leave the operating room to change out the sterilized equipment, but that personnel are always “in voice range” of the surgical room, that assistants never leave the surgical area of the office, that personnel are always in the surgical area in the event of dental and medical emergencies, and that a patient would never be left alone with a CRNAfor an extended period of time. However, Dr. Salama also admitted that the videos of J. B. appeared to have been recorded during the transition period between his surgical procedure and Dr. Garber’s cosmetic procedure. Notwithstanding the foregoing circumstances, and despite admitting that the nature of Serdula’s intervening acts is “relatively uncommon,” the majority is “not persuaded ... that... GGS could not reasonably have foreseen them.”[24]
First, it is undoubtedly true that sexual assaults in dental offices can and do occur, as evidenced by the vile acts perpetrated on J. B. by Serdula.[25] And other testimony established that sexual assaults and molestation are considered “never events” in the medical community, which are occurrences that are preventable and should “never” happen.[26] Additionally, one of J. B.’s experts testified that while the *434 requirement for monitoring an anesthetized patient is mainly intended to address medical emergencies, it is also “somewhat of a safeguard not only for patient safety reason[s] but for ... practitioner reasons”; that “[n]o one would want to be left alone with a sedated patient” so as to protect their license and “avoid any kind of accusations of any kind of problems that might occur”; and that having two people in the room protects against sexual assaults and claims of sexual assault. Another expert opined that Drs. Salama and Garber’s failure to have the necessary permits[27] resulted in their inability to recognize J. B.’s level of sedation and, thus, “allowed this event to happen” due to a lack of proper procedures and protocols. But GGS could only be liable for Serdula’s criminal acts if those acts were foreseeable as a matter of law — i.e., if they were the natural or probable consequences of leaving J. B. alone with Serdula, no matter how briefly, while under the effects of anesthesia.[28] And contrary to the majority’s holding, the evidence simply does not establish that the criminal acts perpetrated on J. B. by Serdula were foreseeable in this legal sense, thereby breaking the causal connection and relieving GGS of liability.[29]
Foreseeable consequences are “those which are probable, according to ordinary and usual experience, or those which, because they happen so frequently, may be expected to happen again.”[30] The law *435 does not require one to “anticipate or foresee and provide against that which is unusual or that which is only remotely and slightly probable.”[31] And the above-referenced expert testimony is founded upon a vague and generalized concept of violence that only suggests the mere possibility of improper conduct if a patient is left alone while under anesthesia, not the probability of improper conduct.[32] If anything, testimony by GGS’s expert regarding a single dental-school classmate who molested patients demonstrated how infrequently such instances occur.[33]
Furthermore, it is undisputed that Serdula had been highly recommended to GGS, had nearly perfect credentials and references, had no known prior criminal history, and did not make co-workers or patients feel uncomfortable while in his presence. Thus, nothing made it foreseeable that Serdula would sexually assault a sedated patient if left alone with her for a brief period of time.[34] Accordingly, the evidence did not establish that Serdula’s intervening criminal act *436 “could reasonably have been anticipated, apprehended, or foreseen” by GGS, thereby breaking the causal connection.[35]
Thus, I disagree that, as a matter of law, sexual assault is a reasonably foreseeable consequence of leaving a patient alone for brief periods of time with a CRNA who has no known history of sexual violence or deviance, in an operating room left open to an area continuously occupied by multiple medical staff members. And because GGS had no reason to anticipate the criminal act, the general rule applies and Serdula’s intervening criminal act insulates GGS from J. B.’s allegations of liability.[36] Moreover, although questions of negligence, diligence, cause, proximate cause, and whose negligence constituted the proximate cause of the harm suffered by the plaintiff are generally for the jury,[37] a trial court can “conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff... [when] the evidence is plain, palpable [,] and undisputable.”[38] This is such a plain, palpable, and undisputable case that I would hold that the trial court erred in failing to grant GGS’s motion for directed verdict.[39]
*437 In reaching these conclusions, I recognize that the acts perpetrated by Serdula against J. B. and others were heinous, reprehensible, and inexcusable. J. B. was the victim of outrageous, vile acts committed by a man whose imprisonment has no doubt made the world a safer place. But even in the face of circumstances as horrific and extraordinarily sympathetic as those presented in this case, this Court is nevertheless duty bound to uphold well-settled principles of law. As always, our charge is to see that “justice is fairly dispensed to all parties concerned, and this creates an equally important judicial obligation not to render judgments born only of generosity or compassion.”[40] In so doing, I would reverse.
I am authorized to state that Judge Ray and Judge McMillian join in this dissent.

 OCGA §43-11-21.1 (a).

 OCGA § 43-11-21.1 (b) (1) (A), (B).

 OCGA § 43-11-21.1 (b) (2).

 OCGA §43-11-21.1 (b) (3).

 OCGA §43-11-21.1 (d)(1).

 OCGA § 43-11-21.1 (d) (2) (emphasis supplied).

 Maj. op. at 422.

 OCGA § 51-1-6.

 Norman v. Jones LangLasalle Americas, Inc., 277 Ga. App. 621, 628 (2) (b) (627 SE2d 382) (2006) (punctuation omitted); accord Brown v. Belinfante, 252 Ga. App. 856, 861 (1) (557 SE2d 399) (2001); see also Atlanta & W.P.R. Co. v. Underwood, 218 Ga. 193, 195 (1) (126 SE2d 785) (1962) (“The court in determining whether the violation of a statutory requirement is negligence per se as to the person complaining thereof upon which a cause of action will rest, will look to the particular statute in respect to its purposes, that is, the evils it was intended to guard against and the persons it was intended to protect.” (punctuation omitted)).

 See Central Anesthesia Associates, P.C. v. Worthy, 254 Ga. 728, 732 (2) (333 SE2d 829) (1985) (holding that statute requiring that certified nurse anesthetists operate under the direction and responsibility of licensed physicians trained and experienced in anesthesia when administering anesthesia was designed to protect against the improper administration of anesthesia causing medical complications); Central Anesthesia Associates, P.C. v. Worthy, 173 Ga. App. 150, 153 (325 SE2d 819) (1984) (holding that statute requiring that certified nurse anesthetists operate under the direction and responsibility of licensed physicians trained and experienced in anesthesia when administering anesthesia was designed “to protect patients from the dangers of improperly administered anesthesia by those unqualified by a lack of what public policy regards as minimum education in the field, and by a lack of specified supervision”); *430 see also Groover v. Johnston, 277 Ga. App. 12, 16 (1) (b) (625 SE2d 406) (2005) (“Common sense dictates that if an unqualified person selects an improper drug or administers an improper type or amount of medication, especially to a patient emerging from anesthesia, disastrous consequences ... are possible.”). Cf. Brown, 252 Ga. App. at 861 (1) (holding that dentist’s provision of cosmetic surgery services did not constitute the practice of dentistry and, as such, dentist violated statute by performing services that exceeded its scope; and the harm that plaintiff suffered — chronic infection, remedial corrective surgeries, speech impediment, and facial asymmetry' — were the type of harm that statute was designed to prevent).

 Compare OCGA § 43-10-21.1 (d) (1) with OCGA § 43-11-21.1 (d) (2).

 See OCGA § 43-10-16 (providing actions to enjoin practice by unlicensed or unregistered barbers or cosmetologists, and containing the very same declaration that “the unlicensed activities referred to in this Code section are a menace and a nuisance dangerous to the public health, safety, and welfare”).

 Even if J. B. could establish negligence per se, she would still need to “demonstrate a causal connection between the negligence per se and the injury.” Norman, 277 Ga. App. at 628 (2) (b) (punctuation omitted); see also Worthy, 254 Ga. at 733 (2) (“Plaintiff must still prove proximate cause and actual damage in order to recover on a cause of action for ‘negligence.’... [E] ven when negligence per se has been shown, proximate cause must still be proved.” (citation omitted)); Humphreys v. Kipfmiller, 237 Ga. App. 572, 575 (2) (515 SE2d 878) (1999) (“Negligence per se is actionable negligence only where it is the proximate cause of the plaintiff’s injuries.”). And for the reasons discussed infra, she could not establish proximate cause.

 See OCGA § 51-1-27 (“A person professing to practice surgery or the administering of medicine for compensation must bring to the exercise of his profession a reasonable degree of care and skill. Any injury resulting from a want of such care and skill shall be a tort for which a recovery may be had.”).

 Johnson v. Am. Nat'l Red Cross, 276 Ga. 270, 273 (578 SE2d 106) (2003) (punctuation omitted); accord Ga. Dept. of Transp. v. Owens, 330 Ga. App. 123, 130 (2) (766 SE2d 569) (2014).

 Owens, 330 Ga. App. at 130 (2) (punctuation omitted); see also Cowart v. Widener, 287 Ga. 622, 627-28 (2) (b) (697 SE2d 779) (2010) (“In the tort context, proximate causation includes all of the natural and probable consequences of the tortfeasor’s negligence, unless there is a sufficient and independent intervening cause.”); Palsgraf v. Long Is. R.R. Co., 248 N.Y. 339, 344 (1928) (“The risk reasonably to be perceived defines the duty to he obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension.” (citation omitted)).

 Delta Airlines, Inc. v. Townsend, 279 Ga. 511, 515 (1) (614 SE2d 745) (2005) (punctuation omitted); accord Owens, 330 Ga. App. at 130 (2); see also OCGA § 51-12-9 (‘“Damages which are the legal and natural result of the act done, though contingent to some extent, are not too remote to be recovered. However, damages traceable to the act, but which are not its legal and natural consequence, are too remote and contingent to be recovered.”).

 Ontario Sewing Mach. Co. v. Smith, 275 Ga. 683, 686 (2) (572 SE2d 533) (2002) (punctuation omitted); accord Granger v. MST Transp., LLC, 329 Ga. App. 268, 270 (1) (764 SE2d 872) (2014).

 Ontario Sewing Mach. Co., 275 Ga. at 686 (2) (punctuation omitted); accord Granger, 329 Ga. App. at 270 (1).

 Owens, 330 Ga. App. at 131 (2); see Williams v. Grier, 196 Ga. 327, 338 (2) (26 SE2d 698) (1943) (“[When] there has intervened between the defendant’s negligence and the injury an independent illegal act of a third person producing the injury, and without which it would not have occurred, such independent criminal act should be treated as the proximate cause, insulating and excluding the negligence of the defendant. But even this rule would not apply if the defendant ‘had reasonable grounds for apprehending that such criminal act would be committed.’ ”).

 Bradley Ctr., Inc. v. Wessner, 250 Ga. 199, 202-03 (1) (296 SE2d 693) (1982) (punctuation omitted); accord Atlantic Coast Line R. Co. v. Godard, 211 Ga. 373, 377 (1) (86 SE2d 311) (1955).

 Bradley Ctr., Inc., 250 Ga. at 202-03 (1) (punctuation omitted); accord Atlantic Coast Line R. Co., 211 Ga. at 377 (1).

 See Atlanta Obstetrics & Gynecology Grp., P.A. v. Coleman, 260 Ga. 569, 570 (398 SE2d 16) (1990) (“[Wjhether proximate cause exists in a given case is a mixed question of law andfact. It requires both factfinding in the ‘what happened’ sense, and an evaluation of whether the facts measure up to the legal standard set by precedent. Ordinarily, both determinations are most appropriately made by a jury upon appropriate instructions from the judge. The decision may be made by the trial judge or appellate court only if reasonable persons could not differ as to both the relevant facts and the evaluative application of legal standards (such as the legal concept of ‘foreseeability’) to the facts. In other words, although what amounts to proximate cause is undeniably a jury question, it will be determined by the court as a matter of law in plain and undisputed cases.” (citation and punctuation omitted)).

 Maj. op. at 420.

 Indeed, GGS’s own expert testified that he attended school with a dentist who was caught sexually molesting patients who were under conscious sedation with nitrous oxide.

 Although there was expert testimony that “never events” are “foreseeable,” it is clear from the testimony as a whole that “never events” are possible occurrences, not that these events are, according to ordinary and usual experience, probable, or that they happen so frequently that they may be expected to happen again such that they are foreseeable in a legal sense. See infra notes 18-22 & accompanying text. See generally 14 Ga. Juris. Personal Injury & Torts Proximate Cause § 21:23 (2015) (“To establish proximate cause,... a mere possibility of such causation is not enough, and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant. In addition, the injuries caused must be a foreseeable consequence of the defendant’s actions. Thus, there must he a direct relationship between the negligence and the plaintiff’s injury.” (footnotes omitted)). Indeed, there was testimony that “never events,” which include incidents such as operating on the wrong body part or leaving a sponge in place, are “foreseeable events. We don’t know who and when [sic] they’re going to happen, hut there are policies and procedures in place to prevent them from happening.” (Emphasis supplied.) Additionally, though “foreseeable” or “known,” the testimony emphasized that many “never events” are omitted from surgical consent forms because “[w]e can’t list every possible bad thing that could happen.... On a surgical consent we try to hit... common things that can happen with that surgical procedure ....” (Emphasis supplied.) And a broad, general statement that an occurrence such as sexual assault is always “foreseeable” runs afoul of the legal principle that “[t]he question of proximate cause depends upon the facts of each particular case[.]” Jacobs v. Taylor, 190 Ga. App. 520, 525-26(1) (c) (379 SE2d 563) (1989) (punctuation omitted) (emphasis supplied); accord Rustin Stamp & Coin Shop, Inc. v. Ray Bros. Roofing & Sheet Metal Co., Inc., 175 Ga. App. 30, 31 (1) (332 SE2d 341) (1985); Valdosta Street R. Co. v. Fenn, 11 Ga. App. 586 (3) (75 SE 984) (1912) (Syllabus by the Court); see also Coleman, 260 Ga. at 569 (“[Pjroximate cause is always to be determined on the facts of each case upon mixed considerations of logic, common sense, justice, policy and precedent.” (punctuation omitted)).

 See discussion supra.

 See Ontario Sewing Mach. Co., 275 Ga. at 686 (2) (holding that if the character of the intervening act is “such that its probable or natural consequences could reasonably have been anticipated, apprehended, or foreseen by the original wrong-doer, the causal connection is not broken, and the original wrong-doer is responsible for all of the consequences resulting from the intervening act” (punctuation omitted)); Williams, 196 Ga. at 337 (2).

 McAuley v. Wills, 251 Ga. 3, 7 (5) (303 SE2d 258) (1983) (“To hold that an intervening act was not reasonably foreseeable at the time of the defendant’s negligent conduct is to say that the defendant’s negligence was not the proximate cause of the plaintiff’s injury. Although what amounts to proximate cause is undeniably a jury question, it will be determined by the court as a matter of law in plain and undisputed cases.” (citation omitted)); see also Bradley Ctr., Inc., 250 Ga. at 202-03 (1) (“There are cases ... in which the intervening criminal acts may he foreseeable. In such cases, tort liability is proper. The general rule that the intervening criminal act of a third person will insulate a defendant from liability for an original act of negligence does not apply when it is alleged that the defendant had reason to anticipate the criminal act.”).

 See Medical Ctr. v. Cavender, 331 Ga. App. 469, 473 (1) (771 SE2d 153) (2015) (punctuation omitted); accord Brown v. All-Tech Investment Group, 265 Ga. App. 889, 893 (1) (595 SE2d 517) (2004); see Thomas v. Food Lion, LLC, 256 Ga. App. 880, 882 (1) (570 SE2d 18) (2002) (“The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again.”); Morris v. Baxter, 225 Ga. App. 186, 187 (483 SE2d 650) (1997) (same); Jacobs, 190 Ga. App. at 526 (1) (c) (same); see also City of Macon v. Dykes, 103 Ga. 847 (31 SE 443) (1898) (“[T]he negligence of the defendants was not the proximate cause of the injuries of which the plaintiff complained. His injuries were not the natural and probable consequences of such negligence. The only immediate and direct effect of the contact of the wheels of the cart with the rails of the track was the noise. This noise may have been a natural and probable result of such contact, but it was not reasonable and probable that an ordinarily gentle and roadworthy horse would have been so frightened by it *435 as to instantly cause him to kick, become entirely unmanageable, and run away. Such a noise and such an extreme fright in an ordinarily gentle horse as to cause him to kick and run away, we think, are not known by common experience to he naturally and usually in sequence; the one does not follow the other according to the usual course of events.”).

 Cavender, 331 Ga. App. at 473 (1) (punctuation omitted); accord Dowdell v. Wilhelm, 305 Ga. App. 102, 105 (1) (699 SE2d 30) (2010); see also Allan v. Jefferson Lakeside, L.P., 333 Ga. App. 222, 228 (2) (775 SE2d 763) (2015); Jacobs, 190 Ga. App. at 526 (1) (c); Campbell v. S. Bell Tel. & Tel. Co., 161 Ga. App. 589, 590 (2) (288 SE2d 919) (1982).

 See Brown, 265 Ga. App. at 895 (1) (holding that assertion as to “common knowledge” regardingpropensitiesforworkplace violence were “too vague and generalized to support the... claim of liability,” and that expert testimony that event was foreseeable was based upon “generalized concepts of violent reactions” and four specific events of workplace violence).

 See Cavender, 331 Ga. App. at 476 (1) (a) (finding that the opinions of plaintiff’s expert illustrated “that even arguably similar acts of violence were so unusual, contrary to ordinary experience, and rare that no reasonable jury could find [the defendant] should have guarded against them” (punctuation omitted)); Brown, 265 Ga. App. at 895-96 (1) (holding that expert testimony as to four other incidents of workplace violence “illustrate [d] vividly that even arguably similar acts of violence were so unusual, contrary to ordinary experience, and rare that no reasonable jury could find the [defendants] should have guarded against them”).

 See Doe v. Shapiro, No. 273950, 2008 WL 583556, at *7 (Mich. Ct. App. 2008) (holding that plaintiff could not establish negligence after CRNA’s sexual assault while she was under effects of anesthesia because she failed to demonstrate that defendant doctor and medical center “had actual or constructive knowledge because she presented no testimonial or documentary evidence to indicate that” the defendants “either knew or should have known that [the CRNA] might sexually assault a patient”); N. X. v. Cabrini Med. Ctr., 280 AD2d 34, 39 (N.Y. App. Div. 2001) (holding that “the possibility that a surgical resident with no history of sexual misconduct would enter a surgical recovery room and assault a patient is too remote to be considered legally foreseeable”); see also Boone v. Udoto, 323 Ga. App. 482, 484 (1) (747 SE2d 76) (2013) (holding that shooting of club patron in parking lot was unforeseeable to club owners when they had no prior knowledge of shooter’s propensities and no prior altercations involving guns). Cf. Bunn-Penn v. S. Reg'l Med. Corp., 227 Ga. App. 291, 294 (2) (488 SE2d 747) (1997) (holding that plaintiff’s claim for negligent hiring and retention of technician who sexually assaulted her failed because there was no evidence to authorize a finding that the hospital knew or should have known that the technician was prone to commit such acts).

 Ontario Sewing Mach. Co., 275 Ga. at 686 (2) (punctuation omitted); accord Granger, 329 Ga. App. at 270 (1).

 Bradley Ctr., Inc., 250 Ga. at 202 (1); accord Atlantic Coast Line R. Co., 211 Ga. at 377 (1).

 See Owens, 330 Ga. App. at 131 (2); see also Sturbridge Partners, Ltd. v. Walker, 267 Ga. 785, 786 (482 SE2d 339) (1997) (“[T]he question of reasonable foreseeability of a criminal attack is generally for a jury’s determination rather than summary adjudication by the courts.” (punctuation omitted)); Stegall v. Central Ga. Elec. Mem. Corp., 221 Ga. App. 187, 190 (2) (470 SE2d 782) (1996) (“Except in plain, palpable and undisputed cases where reasonable minds cannot differ as to the conclusions to be reached, questions of negligence, proximate cause, including the related issues of foreseeability, assumption of risk, lack of ordinary care for one’s own safety, lack of ordinary care in avoiding the consequences of another’s negligence, contributory and comparative negligence are for the jury.” (punctuation omitted)).

 Munroe v. Univ. Health Srvs., Inc., 277 Ga. 861, 864 (2) (596 SE2d 604) (2004) (quoting Robinson v. Kroger Co., 268 Ga. 735, 739 (493 SE2d 403) (1997)); see also Coleman, 260 Ga. at 570 (“[Ajlthough what amounts to proximate cause is undeniably a jury question, it will be determined by the court as a matter of law in plain and undisputed cases.” (punctuation omitted)); see also Ga. Power Co. v. Kinard, 47 Ga. App. 483, 486 (3) (170 SE 688) (1933) (“[When] the evidence plainly and manifestly shows that the injury was caused by the intervening efficient act of the third person . . . , the defendant cannot be held responsible for having produced the injury, and the question is then one of law for determination by the court, and not one of fact for the jury. The liability of the defendant is limited to those consequences which it should reasonably have anticipated as the natural and probable result of its own act or omission.”).

 See Stegall, 221 Ga. App. at 190 (2) (holding that summary judgment to defendant was appropriate when intervening act was not foreseeable as a matter of law); Tucker Fed. Savings & Loan Ass’n v. Balogh, 228 Ga. App. 482, 484 (491 SE2d 915) (1997) (holding that summary judgment should have been granted to defendant when the harm suffered by the plaintiff was too remote to arise from any action taken by the bank); Strickland v. DeKalb Hosp. Auth., 197 Ga. App. 63, 67-68 (2) (d) (397 SE2d 576) (1990) (holding that summary judgment to defendant was appropriate when it was not foreseeable that appellant would leave hospital and shoot and *437 kill his wife after being left unattended under the effects of various medications). Cf. Landings Ass’n v. Williams, 291 Ga. 397, 399 (728 SE2d 577) (2012) (noting that a “trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only [when] the evidence is plain, palpable and undisputable,” and holding that the trial court erred in failing to grant summary judgment to defendant in premises-liability case when plaintiff who was fatally injured in an alligator attack assumed the risk of injury and failed to exercise ordinary care for her own safety); Coleman, 260 Ga. at 570 (reversing grant of j.n.o.v. when case “involve[d] foreseeable complications relating to abortion procedures that would not have been necessary if not for [doctor’s] negligent administration of a hormone shot” and noting that “[t]he record .[was] not devoid of evidence that [doctor’s] negligence was the proximate cause of [plaintiff’s] injuries”); McAuley, 251 Ga. at 6 (5) (holding that, “assuming that the [earlier] car crash did not leave [plaintiff] wholly unable to give birth to a child, then the delivery of the child in a manner incompatible with the mother’s paraplegia constituted an intervening act not reasonably foreseeable at the time of the car crash,” and concluding that car crash was not the proximate cause of child’s death such that complaint was properly dismissed).

 Stegall, 221 Ga. App. at 190 (2); accord Caribbean Lumber Co. v. Phoenix Assurance Co. of NY, 227 Ga. App. 236, 238 (3) (a) (488 SE2d 718) (1997).